UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE ESTATE OF SPENCER MCCAIN, *et al*., | * | |
| Plaintiffs, | * | |
| v. | | |
| | * | Civil Action No.: SAG 18-2864 |
| BALTIMORE COUNTY GOVERNMENT *et al.,* | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## I.    INTRODUCTION

Plaintiffs' Amended Complaint purports to plead five causes of action.  Counts I and II allege deprivation of rights claims under 42 U.S.C. § 1983 and the Maryland Declaration of Rights against Officers Wilkes, Besaw, and Stargel and Baltimore County ("collectively, the County Defendants").  Specifically, Plaintiffs allege that the actions giving rise to the subject incident constituted an unreasonable seizure of the person in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Articles 24 and 26 the Maryland Declaration of Rights.  ECF No. 39 ¶¶ 2, 56.  Count III alleges a *Monell* claim against Baltimore County ("the County") for inadequate training, supervision, and discipline.  *Id.* ¶¶ 60-76.  *See Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Counts IV and V are wrongful death and survival actions, respectively, against all of the County Defendants.  *Id.* ¶¶ 77-92.

The County Defendants move to dismiss all claims asserted against them, pursuant to Federal Rule of Civil Procedure 12(b)(6), as the Amended Complaint fails to state a claim upon which relief may be granted. The Court should grant this dispositive motion for the following reasons:

- Some of the Plaintiffs lack standing to bring claims in the Amended Complaint (specifically, Counts I, II, III and V);

- Count V is duplicative and procedurally incorrect;

- Plaintiffs' U.S. Constitutional and Maryland Declaration of Rights claims substantively fail;

- Plaintiffs' § 1983 *Monell* claim against the County fails, as there are no facts to support such;

- The County Defendants are immune from Counts IV and V; and

- Plaintiffs claim for punitive damages under § 1983 fails, as there is no allegation of evil motive or intent, or reckless or callous indifference to the right(s) of Mr. McCain.

## II.   STATEMENT OF FACTS[1]

On June 25, 2015, Officers Wilkes, Besaw, and Stargel (the "Officer Defendants"), of the Baltimore County Police Department, responded to multiple emergency calls for a domestic disturbance at 3042 Hunting Ridge Drive, Owings Mills, Maryland 21117.  ECF No. 39 ¶¶ 15, 19. Officers responded to the residence twice.  The first time, the Officers left the residence after knocking on the door and receiving no response.  *Id.* ¶ 19.  The Officers returned to the residence after receiving another call requesting assistance at that same address.  *Id.* ¶ 20.  Upon their return to the residence, the Officers made entry and Spencer McCain, decedent, was shot during the encounter between himself and the Officers.  *Id.* ¶¶ 26, 29.  Mr. McCain was pronounced dead a little over four hours later.  *Id.* ¶ 50.  Plaintiffs allege that Mr. McCain had been previously diagnosed with paranoid schizophrenia.  *Id.* ¶¶ 17-8, 20.

## III.   STANDARD OF REVIEW

Defendants move pursuant to Rule 12(b)(6) to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.  In assessing a complaint's sufficiency, the

---

[1] Defendants recite the facts as pled in the Amended Complaint. This recitation is not, and should not be, construed as a concession or admission of any of the facts contained therein.

Supreme Court has established the following two-pronged analysis: (1) the principle that the court should accept the truth of factual allegations is inapplicable to conclusory allegations; and (2) a complaint will only survive a Rule 12(b)(6) motion if it states a plausible claim for relief. FED. R. CIV. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2009).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Under the first prong of the sufficiency test, the Fourth Circuit has determined that "we need not accept the legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)) (internal quotation marks and citations omitted). "This approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Once a pleading is stripped of its allegations that are not entitled to truth, the second prong requires the lower federal court to determine if the remaining factual allegations state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 677-83; *Twombly*, 550 U.S. at 555-70; *Glassman*, 628 F.3d at 145-150; *Giacomelli*, 588 F.3d at 194-97.  Thus, where the well pled facts of a pleading ". . . do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown –'that the pleader is entitled to relief.'"  *Iqbal*, 129 S. Ct. at 1950; *see also Giacomelli*, 588 F.3d at 193; *Glassman*, 628 F.3d at 145 (citing *Twombly*, 550 U.S. at 557). In sum, the Complaint cannot survive Defendants' Rule 12(b)(6) motion to dismiss if it contains

nothing more than ". . . an unadorned, the-defendant-unlawfully-harmed-me accusation" that is insufficient to state a plausible claim for relief.  *See Iqbal*, 129 U.S. at 1949; *see also Giacomelli*, 588 F.3d at 193.

In the instant matter, the Amended Complaint fails to state a plausible claim for relief and must be dismissed with prejudice and without leave to amend.

### IV.   <u>ARGUMENT</u>

#### A. Counts I, II, III and V Fail to the Extent They Are Asserted by The Individual Plaintiffs Because They Lack Standing.

While a wrongful death suit is brought by the dependent on their own accord for the purpose of compensating the dependent themselves for the loss of the deceased benefactor, a survival action is one where a decedent's representative, steps into the shoes of the decedent, to bring a claim(s) the decedent himself could have brought, had his life not terminated.  *See Binnix v. Johns-Manville Products Corp.*, 593 F. Supp. 1180, 1181–82 (D. Md. 1984) (citing *Stewart v. United Electric Light and Power Co.*, 104 Md. 332, 334 (1906)) (discussing the difference between wrongful death and survival action claims in Maryland).

MD Code, Estates and Trusts § 7-401(y)(1) states "[a] personal representative may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted."  In the present case, there are no allegations that the Defendants violated the constitutional rights of any Plaintiff personally, other than Mr. McCain.  Thus, the only Plaintiff who has proper standing to bring any claim for the alleged violations of the decedent, Mr. McCain, is his estate.  Accordingly, to the extent Plaintiffs Sheila Smith and Shannon Sulton as mother and next friend of N.M, K.M., and S.M.

(minor children of the decedent, whom Plaintiffs contend are statutory beneficiaries) attempt to bring direct claims (Counts I, II, III, and V) against Defendants, they should be dismissed.

### B. COUNT V FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

As noted above, a survival action is one where a decedent's representative, steps into the shoes of the decedent, to bring a claim(s) the decedent himself could have brought, had his life not terminated. *See Binnix*, 593 F. Supp. at 1181–82 (citing *Stewart*, 104 Md. at 334) (discussing the difference between wrongful death and survival action claims in Maryland). MD Code, Estates and Trusts § 7-401(y)(1) proscribes that a personal representative of a decedent's estate is the proper party to bring a survival action. Thus, a survival action is not a substantive stand-alone claim – it merely provides standing for one to allege substantive claims that a decedent could have brought had their life not terminated.

Count V is not only procedurally incorrect, but it is duplicative of Counts I-III. Accordingly, Count V should be dismissed in its entirety. Nevertheless, his substantive claims fail, as a matter of law, as shown in more detail below in sections C through E.

### C. PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL.

Counts I, II, IV and V of the Complaint do not state *plausible* causes of action, because Plaintiffs do not plead sufficient facts showing that the Officer Defendants, by using excessive force, violated the Fourth or Fourteenth Amendments of the U.S. Constitution. The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend. IV. Likewise, Section I of the Fourteenth Amendment of the United States Constitution states that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state

shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV, § 1.

The Maryland Declaration of Rights extends these protections to its citizens; notably in Article 26, in plain language states "[t]hat all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted. That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted..  Md. Const., Decl. of Rights, Art. 26.  Similarly, the Due Process Clause of the Fourteenth Amendment is reflected in Article 24 of the Maryland Declaration of Rights, which guarantees that "no man ought to be…deprived of his life, liberty, or property, but by the judgment of his peers, or by the law of the land."  Md. Const., Decl. of Rights, Art. 24.

Articles 24 and 26 are *in pari materia* with their federal analogues and ". . . decisions applying one provision are persuasive authority in cases involving the other . . ." *Dua v. Comcast Cable of Maryland, Inc*., 370 Md. 604, 621 (2002) (quoting *Attorney General v. Waldron,* 289 Md. 683, 714 (1981)); *see also Franklin v. Montgomery County, MD,* No. L-04-2615, 2006 WL 2632298, at *17 (D. Md. Sept. 13, 2006) (same); *Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 78 (2001) (same); *Wells v. State,* 100 Md. App. 693, 707 (1994) (recognizing that "the Federal and

State due process rights are essentially the same . . .").  As such, "'decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities' with respect to Article 24 of the Declaration of Rights." *Hargrove v. Board of Trustees of Maryland Retirement Syst.,* 310 Md. 406, 416 (1987) (citations omitted); *see also Borchardt v. State,* 367 Md. 91, 176 n.14 (2001) (recognizing that the Maryland Court of Appeals "has generally looked for guidance to the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and the federal court decisions interpreting them in delineating the scope of Article 24 protection in Maryland . . ."); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 27 ( 1980) ("Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24.").

Much like the United States Constitution's Fourth Amendment, Article 26 prohibits unconstitutional searches and seizures of persons by the government. S*ee Wilson v. Prince George's County, Maryland*, 893 F.3d 213, 224 (4th Cir. 2018) ("The same standard applies to the Maryland Declaration of Rights claims as to claims asserted under the Fourth Amendment.") (citing *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011); *Richardson v. McGriff*, 361 Md. 437, 445 (2000); *Okwa v. Harper*, 360 Md. 161, 757 A.2d 118, 140–41 (2000)).  The nucleus of any Fourth Amendment analysis, and by extension, Article 26, is whether the seizure is reasonable. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968) ("For what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures . . . The question is whether under all circumstances . . . [the] right to personal security was violated by an unreasonable search and seizure.").  Any claim that "law enforcement officials used excessive force in the course . . . of . . . [a] seizure of [a] person . . . are properly analyzed under the Fourth Amendment's objective

reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).  This is so whether the

force used is deadly or not.  *Id*. at 395.  The Court elaborated on conducting the analysis of force

utilized in hindsight:

> The 'reasonableness' of a particular use of force must be
> judged from the perspective of a reasonable officer on the
> scene, rather than with the 20/20 vision of hindsight.... The
> calculus of reasonableness must embody allowance for the
> fact that police officers are often forced to make split-second
> judgments—in circumstances that are tense, uncertain, and
> rapidly evolving—about the amount of force that is
> necessary in a particular situation.

*Id.* at 396–97.

Counts I, II, IV, and V, Plaintiffs allege that Officers Wilkes, Besaw, and Stargel violated

the 4th and 14th Amendments, as well as, the Maryland Declaration of Rights by subjecting Mr.

McCain to "excessive force during the course of an ongoing arrest and his right not to be deprived

of his liberty."  ECF No. 39 ❡❡ 2, 61, 65, 68, 78, 82, 89.  Remarkably, Plaintiffs fail to identify a

specific article of the Maryland Declaration of Rights and merely assert Count II under the entire

State Constitution generally.  That notwithstanding, it should be noted that Plaintiffs do not allege

that Mr. McCain's arrest or the entry into Mr. McCain's residence was unlawful, merely that the

scope of the arrest exceeded the Officer's authority.

Most importantly, Plaintiffs' Amended Complaint fails to plead that it is plausible that the

actions taken by the Officer Defendants were unreasonable in light of the facts and circumstances

they knew on June 25, 2015, when the incident occurred.  Instead, Plaintiffs only assert that Mr.

McCain was mentally ill, that at the time the incident occurred the Baltimore County Police

Officers had a mobile crisis unit trained to intervene in cases where the person of interest was

mentally ill, and that the failure to call this unit was *per se* unreasonable.  Not only is this a bald

assertion that is insufficient to establish a prima facie cause of action under the federal and state

constitutional principles raised in Plaintiffs' Amended Complaint, but a prophylactic standard as to reasonableness for a class of persons is contrary to well-established Fourth Amendment jurisprudence. *Cf. Bell v. Wolfish*, 441 U.S. 520, 559 (1979) ("The test of reasonableness under the Fourth Amendment is not capable of premise definition or mechanical application."). Simply put, Plaintiffs' Amended Complaint merely asserts claims based simply upon the fact that deadly force was used and Mr. McCain was mentally ill, without any facts *specific to the circumstances of the incident* that support the allegation that the degree of force used was unlawful. ECF No. 39 ¶¶ 52-53, 58, 83, 90. These allegations are devoid of the "factual enhancement" necessary to cross 'the line between possibility and plausibility of entitlement to relief.'" *Giacomelli*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557).

As Plaintiffs' Due Process claims are related only to their allegations that the Officer Defendants used excessive force, these claims must also fail as the proper analysis to determine the reasonableness of the seizure of persons is the Fourth Amendment, and by extension, Article 26. *Graham*, 490 U.S. at 388 ("Excessive force in the course…of…[a] seizure of [a] person…[is] properly analyzed under the Fourth Amendment's objective reasonableness standard, rather than substantive due process.").

### D.  PLAINTIFFS' § 1983 *MONELL* CLAIM AGAINST THE COUNTY FAILS.

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See*, *e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012). Importantly, § 1983 is not an independent source of rights, but provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted).

A municipality is liable under 42 U.S.C. § 1983 when "the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).   In other words, Plaintiffs must first establish an underlying constitutional violation, before moving on to establish the County is additionally liable, due to a "policy, practice or custom" being the "moving force" behind the injury.  *See Jones v. Ziegler*, 894 F. Supp. 880, 883 (D. Md. 1995); *James v. Frederick County Public Schools*, 441 F. Supp. 2d 755, 761-62 (D. Md. 2006); *Robertson v. Prince George's County*, 215 F. Supp. 2d 664, 665-66 (D. Md. 2002); *Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995); *Marryshow v. Bladensburg*, 139 F.R.D. 318, 319-21 (D. Md. 1991).  In the present case, Plaintiffs allege one underlying constitutional violation of the 4th and 14th Amendments, pursuant to 42 U.S.C. § 1983 against Officers Wilkes, Besaw, and Stargel. *See* ECF No. 39 Count I.

A plaintiff may establish the existence of a policy or custom: "1) through an express policy, such as a written ordinance or regulation; 2) through the decisions of a person with final policymaking authority; 3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or 4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). There must be an "affirmative link" between the identified policy or custom and the specific violation.  *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1984).

In the present case, Plaintiffs alleges liability against Baltimore County under the third and fourth types of *Monell* theories.  In Count III, Plaintiffs allege that Baltimore County failed to adequately train, supervise, and discipline Baltimore County police officers, who Plaintiffs allege

"developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens of Baltimore County suffering from mental illness." ECF No. 39 ¶ 70.  Plaintiffs do not allege any facts regarding what training the Officer Defendants had or did not have, nor what discipline and/or supervision they should, but did not, receive.  Plaintiffs simply allege that the failure to call for the mobile crisis team was the result of a lack of training, supervision, and discipline.  ECF No. 39 ¶ 72.  Further, the Amended Complaint is devoid of any factual allegations Baltimore County's 'failure to train was a "deliberate or conscious" choice.' *See Collins v. City of Harker Heights,* 503 U.S. 115, 128 (1992) ("We . . . are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense. Petitioner's claim is analogous to a fairly typical state-law tort claim.").

The Amended Complaint is also devoid of any facts to show that any failure of the County to train was so severe as to reach the level of "deliberate indifference" to citizens' constitutional rights. *See Hector v. Weglein*, 558 F. Supp. 194, 202 (1982); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  There are no factual allegations that Baltimore County policymakers "drew the inference" that their conduct was inappropriate in light of the risk of constitutional injury.  Finally, there are no factual allegations to demonstrate a close casual nexus between the alleged failure to train, supervise, and disciple the Officer Defendants and the force applied in this matter.

For the reasons that follow, Plaintiffs have not alleged facts sufficient to survive a motion to dismiss under any theory of *Monell* liability.

   *1.  Negligence is categorically insufficient for Monell liability.*

As a preliminary matter, Plaintiffs' *Monell* claim against the County appears to be nothing more than a simple negligence claim. ECF No. 39 ¶¶ 69-76.  Negligent or even gross negligent

conduct is insufficient, as a matter of law, to state a plausible *Monell* claim because of the inability

to show that a municipality knew and understood that its choice was inappropriate in light of the

risk of the constitutional injury.  *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).  In other words,

deliberate indifference is an extremely high standard of fault, *i.e.*, mere negligence and/or even

gross negligence are *never* sufficient to meet the standard. *See Connick v. Thompson*, 563 U.S. at

61 ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal

actor disregarded a known or obvious consequence of his action."). Deliberate indifference is a

concept separate from negligence and equating the two concepts is legally incorrect. Consequently,

Count III fails to state a claim upon which relief may be granted and should be dismissed.

2.   *The Amended Complaint does not state a claim for failure to train.*

Plaintiffs do not state a plausible claim for relief in Count III with respect to a failure to

train. "To state a failure to train claim, the plaintiff must allege facts that reveal: (1) the nature of

the training, (2) that the training was a deliberate or conscious choice by the municipality, and (3)

that the officer's conduct resulted from said training."  *McDowell v. Grimes*, No. GLR-17-3200,

2018 WL 3756727, at *4 (D. Md. Aug. 7, 2018) (citations omitted).   As the Honorable Judge

Russell stated:

> The nature of the training element "requires more than bald
> assertions that police officers were not properly trained."
> *Jones*, No. 2015 WL 4509871, at *20. It is not sufficient to
> state "in broad, conclusory terms and in a variety of different
> ways" that the police department "failed to train and
> supervise its officers." *Peters v. City of Mount Rainier*, No.
> GJH-14-0955, 2014 WL 4855032 at *5 (D. Md. Sept. 29,
> 2014). Nor is alleging a "general laxness or ineffectiveness"
> sufficient to state a claim. *Shields v. Prince George's Cty.*,
> No. GJH-15-1736, 2016 WL 4581327, at *9 n.11 (D. Md.
> Sept. 1, 2016) (quoting *Spell*, 824 F.2d at 1390). ***Instead, a
> plaintiff must allege a "specific deficiency" with the
> training.***

*Id.* (emphasis added); *see also Spell*, 824 F.2d at 1390 (stating that a plaintiff must establish "a specific deficiency rather than general laxness or ineffectiveness in training" and "that the deficiency or deficiencies [are] such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run."); *City of Canton*, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").  On its face, Plaintiff's claim at best, alleges in a conclusory fashion that Baltimore County failed to "appropriately train" Baltimore County Police Department officers.  ECF No. 39 ¶ 72.  Simply stated, because Plaintiff's claim amounts to nothing more than an "Inadequate Training" claim, it fails, even in a conclusory fashion to plead a sufficient failure to train claim against Baltimore County.  *See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Moreover, in *McDowell*, the court ultimately dismissed the claims against the Baltimore Police Department to the extent that they were based on a failure to train because the plaintiff did not address "specific aspects of [the] training program," and held that "[a]bsent any factual detail about the training program, [plaintiff] fails to state a claim." 2018 WL 3756727, at *4 (citation omitted). Likewise, in the instant case, Plaintiff does not allege any facts about the training program or point to any specific deficiencies in the training. *See also McDougald v. Spinnato*, No. ELH-17-2898, 2019 WL 1226344, at *15 (D. Md. Mar. 15, 2019) (dismissing a failure to train claim where plaintiff "failed to identify a particular BPD training practice or any specific defect or omission in the BPD training program and failed to draw a connection between the incident [] and any precise shortcoming in the BPD training program"). Likewise, the barebones, conclusory

allegations in Plaintiffs' Amended Complaint are categorically insufficient because they are devoid of factual detail.

The second element is also lacking. There are no facts to show the County made a deliberate and conscious choice not to train the Officer Defendants. *See Riddick v. Sch. Bd. of City of Portsmouth, Va.*, 238 F.3d 518, 524 (4th Cir. 2000) ("A municipality is not subject to section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality. Rather, 'the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.'") (citation omitted) (emphasis in original).

The third element (causation) is similarly missing. Plaintiffs do not (and cannot) properly plead a chain of causation. The "failure to train" must be closely related to the ultimate injury sustained to plaintiffs. *See City of Canton,* 489 U.S. at 391 ("Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. Thus, in the case at hand, respondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs.").

Plaintiffs do not offer any facts that make it plausible that the failure to train caused the Officer Defendants to violate Mr. McCain's rights. *See McDougald*, 2019 WL 1226344, at *15 ("Fail[ure] to draw a connection between the incident [] and any precise shortcoming in the BPD training program" is a "defect [that] cannot be ignored."). Plaintiffs do not point to any training program or policy that condones this type of action. Indeed, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [the local government], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390-91.

Therefore, because Plaintiffs do not properly identify the nature of the training, plead facts to show that the alleged failure to train was a deliberate or conscious choice, or plead facts to show that the lack of training caused the constitutional deprivation at issue in this case, Plaintiffs' claim must be dismissed to the extent that it is based on a failure to train.

3.   *The Amended Complaint fails to state a claim for negligent retention or discipline.*

Plaintiffs claim that generally that the  County failed to "appropriately" "supervise and monitor officers who had occasion to respond to calls for service involving individuals suffering from mental illness and/or emotionally disturbed individuals had resulted in police involved shootings." ECF No. 39 ¶ 72; *see also* ¶ 73 ("That it was the policy and/or custom of Baltimore County Police Department to fail to exercise reasonable care in hiring its police officers, thereby failing to adequately prevent constitutional violations on the part of its police officers.").

Leaving aside the fact that negligent conduct is not cognizable under § 1983, Baltimore County officers by law may not be summarily discipline or terminated.  In Maryland, law enforcement officers, including the Defendant Officers in this case, are entitled to the protections of the Law Enforcement Officers' Bill of Rights ("LEOBR"), which provides procedural guarantees when adverse employment decisions are taken on the basis of disciplinary matters. *See Allgood v. Somerville*, 43 Md. App. 187 (1979); Md. Code, Pub. Safety Art., §§ 3-101, *et seq*. The Maryland Court of Appeals, in *DiGrazia v. Cty. Executive for Montgomery Cty.*, explained the LEOBR as follows:

> Any law-enforcement officer covered by the Act is entitled to its protections during any inquiry into his conduct which could lead to the imposition of a disciplinary sanction.
> \*\*\*
> The procedural safeguards afforded to the officer during the official inquiry into his conduct constitute the heart of the Act's protections. *See Abbott v. Administrative Hearing Board*, 33 Md. App. 681, 366 A.2d 756 (1976). If the investigation results in a recommendation that the officer be

> disciplined for his conduct, he is entitled to a hearing under
> § 730. *Moore v. Town of Fairmount Heights*, 285 Md. 578,
> 403 A.2d 1252 (1979). **If the hearing board recommends
> the imposition of a disciplinary sanction, the chief of
> police makes the final determination whether to impose
> punishment.**

288 Md. 437, 453 (1980) (emphasis added).  Therefore, regardless of any notice of prior actions

or foreseeability of the Officer Defendant's conduct Baltimore County had, under Maryland law

such notice would not have provided the County with the power to dismiss or remove the Officer

Defendants from the Department without a hearing in accordance in LEOBR.  Plaintiffs have not

alleged any facts that support an inference that the County failed, after a hearing board

recommended disciplinary sanctions, to impose punishment against the Officer Defendants.  In

fact, the Amended Complaint is devoid any allegation that the Officer Defendants had any

historical disciplinary incidents generally or pertaining to individuals suffering from mental illness

and/or emotionally disturbed individuals.  Of course, as noted above, even if the Chief of Police

elects to not impose the punishment recommended by a hearing board, her decision is free from

liability.

   4. *The Amended Complaint fails to state a claim under the condonation theory.*

  A municipality may be liable under the condonation theory if policymakers fail "to put a

stop to or correct a widespread pattern of unconstitutional conduct." *Owens*, 767 F.3d at 402

(quoting *Spell*, 767 F.3d at 402).  Conduct is persistent and widespread only when it is so flagrant

and pervasive that it has the same effect as an official policy. *See Spell*, 824 F.2d at 1386 ("And

the existence of such custom or usage may be found in persistent and widespread practice of

municipal officials which, although not authorized by written law, **are so permanent and well-

settled as to have the force of law**.") (cleaned up) (emphasis added).  Additionally, when a

plaintiff seeks to establish a policy or custom based on "persistent or widespread practices," the

court must "rigorously test the chain of causation." *See Connick*, 563 U.S. at 75; *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 415 (1997).  In order to survive a motion to dismiss, a plaintiff must support his condonation claim with facts which, if proven, would state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.  Plaintiffs simply fail to do so.

Simply stated, the Amended Complaint is devoid of the factual enhancement necessary to support a condonation claim.  There is not a single allegation of a prior incident similar to the present allegations, such that one could establish a persistent and widespread practice.  *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (a single incident is normally insufficient to state a § 1983 *Monell* claim).  Because Plaintiffs' claim lacks the necessary specificity, this Court should dismiss it.

5. *The Amended Complaint fails to state a claim for § 1983 supervisory liability.*

To the extent Count III may be read to attempt to assert a claim for supervisory liability against Baltimore County, such a claim fails. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  An accused defendant, including a supervisor, must be "personally involved" in the commission of the constitutional tort alleged in the pleadings in order to be liable under § 1983. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  Courts have been cautioned to be especially vigilant that a plaintiff's theory does not "slip into that forbidden realm" where, as in this case, a plaintiff's theory relies on municipal omission. *Id.*

As the Fourth Circuit has said, "a supervisor can only be held liable for the failings of a subordinate under certain **narrow** circumstances." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013) (emphasis added).  With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to ... the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). With respect to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id*. at 799 (quoting *Slakan v. Porter*, 737 F.2d 368, 373-74 (4th Cir. 1984)). As to the second element, "a plaintiff [o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents. . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (alteration in original). As to the third element, "'proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions.'" *Wilkins v. Montgomery*, 751 F.3d 214, 226-27 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799).

As an initial note, Plaintiffs fail to identify an actual supervisor. That notwithstanding, supervisory liability fails for the same reasons *Monell* liability fails. The allegations do not even purport to show that leadership should have had knowledge of general misconduct, let alone that they should have had knowledge of the misconduct specific to the type of alleged violations at issue *in this case*. *See Jones v. Chapman*, No. ELH-14-2627, 2015 WL 4509871, at *24 (D. Md.

July 24, 2015) (stating that supervisory liability cannot be established based on conclusory allegations that a supervisor "should have known about the unconstitutional conduct" or "general averments that a supervisor failed to respond to prior constitutional violations"). There are also insufficient allegations from which to infer that Baltimore County knew of pervasive wrongdoings of the Officer Defendants or were deliberately indifferent to the Officer Defendant's violations of citizens' constitutional rights. Therefore, this Court should dismiss the Count III to the extent that it is based on supervisory liability.

**E. Counts IV and V Should Be Dismissed Because the Defendants Are Immune from these Maryland common law claims.**

Counts IV (Wrongful Death) and V (Survival Action) appear to allege a negligence theory of liability against the Officer Defendants and an inadequate training, supervision and policy theory of liability against Baltimore County. Both theories of liability fail as a matter of law.

*1. Officers Wilkes, Besaw, and Stargel Are Entitled to Public Official Immunity.*

In *James v. Prince George's County*, the Court of Appeals set forth the factors for establishing public official immunity:

> Before a governmental representative in this State is relieved of liability for his negligent acts, it must be determined that the following independent factors simultaneously exist: (1) the individual actor, whose alleged conduct is at issue, is a public official rather than a mere governmental employee or agent; and (2) his tortious conduct occurred while he was preforming a discretionary, as opposed to ministerial, acts in furtherance of his official duties. Once it is established that the individual is a public official and the tort was committed while performing a duty which involves the exercise of discretion, a qualified immunity attaches; namely, in the absence of malice, the individual involved is free from liability.

288 Md. 315, 323 (1980) (internal citations omitted).  Whether a public official's actions are ministerial or discretionary is a question of law. *See McCoy v. Hatmaker*, 135 Md. App. 693, 719 (2000), *cert. denied*, 364 Md. 141 (2001).

The Officer Defendants certainly meet the criteria set forth by the *James* Court.  The Amended Complaint alleges that the Officer Defendants were employed by Baltimore County as police officers with the Baltimore County Police Department at the time that the alleged incident occurred.  ECF No. 39 ¶¶ 5-7.   As police officers, the Officer Defendants are public officials.  *See Houghton v. Forrest*, 412 Md. 578, 585 (2009); *Robinson v. Board of County Comm'rs,* 262 Md. 342, 347, (1971) (citing *Wilkerson v. Baltimore County,* 218 Md. 271, (1958); *Harris v. Mayor of Baltimore,* 151 Md. 11 (1926); *Clea v. Mayor and City Council of Baltimore*, 312 Md. 662, 672 (1988)).

Second, the allegations against the Officer Defendants are that they failed to adequately respond to the call for service at 3042 Hunting Ridge Drive.  These allegations squarely constitute discretionary decisions.  *See Baltimore Police Dep't v. Cherkes,* 140 Md. App. 282, 329 (2001); *Robinson v. Board of County Comm'rs,* 262 Md. 342, 347, (1971) (citing *Wilkerson v. Baltimore County,* 218 Md. 271, (1958); *Harris v. Mayor of Baltimore,* 151 Md. 11 (1926); *Clea v. Mayor and City Council of Baltimore*, 312 Md. 662, 672 (1988)) ("It is clear that policemen are 'public officials' and that when they are within the scope of their law enforcement functions they are clearly acting in a discretionary capacity."); *James v. Prince George's County*, 288 Md. 315, 327 (1980) ("An act falls within the discretionary function of a public official if the decision which involves an exercise of his personal judgment also includes, to more than a minor degree, the manner in which the police power of the State should be utilized.").  As such, the Officer Defendants are entitled to public official immunity to the extent they are alleged to have acted in their capacities as police officers.

Furthermore, there is no allegation that the Officer Defendants acted with actual malice toward Mr. McCain.  To defeat public official immunity, actual malice is required.  *See Thomas v. City of Annapolis*, 113 Md. App. 440, 455 (1997).  A malicious act is one "done knowingly and deliberately, for an improper motive and without legal justification."  *Elliott v. Kupferman*, 58 Md. App. 510, 526 (1984) (citations omitted).  To establish actual malice, a plaintiff must establish that the defendant acted with "an evil or rancorous motive influenced by hate."  *Port Deposit v. Petetit*, 113 Md. App. 401, 416 (1997).  Plaintiffs' allegations do not give rise to such an inference.

For the aforementioned reasons, the Officer Defendants are entitled to public official immunity and this Court should dismiss the Counts IV and V against them with prejudice.

### 2.   *The County is Immune from Suit.*

Under the Local Government Tort Claims Act (hereinafter "LGTCA"), the County must provide a legal defense to the Individual Employee Defendants and pay any judgment rendered against them for damages resulting from acts committed within the scope of their employment. MD. CODE ANN., CTS. & JUD. PROC. §§ 5-302; 5-303.  Thus, the Legislature waived the County's governmental or sovereign immunity, via the LGTCA, only to the extent of the County's duty to defend and indemnify its employees. MD. CODE ANN., CTS. & JUD. PROC. § 5-303(b). Accordingly, the LGTCA does not create a separate cause of action for a plaintiff to sue the County directly for the underlying tortious conduct of its employees – it merely "affects the financial liability of a defendant local government or employee in a tort action." *Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*, 441 Md. 621, 640–41 (2015); *see also Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 318 (2001) ("On several occasions, the Maryland appellate courts . . . have held that the [LGTCA] neither authorizes a direct action against a local government nor waives the common law governmental immunity of an entity designated as a local government.");

*Williams v. Prince George's Cnty.,* 112 Md. App. 526, 552 (1996) ("[the LGTCA] does not provide a method for directly suing the County or other local governments"); *Hansen v. City of Laurel*, 420 Md. 670, 679–80 n. 5 (2011) ("First, the LGTCA does not waive the limited immunity enjoyed by local governments [.] . . . Second, the LGTCA does not waive any immunity enjoyed by 'public officials' and other similar representatives of local government against potential tort claimants."); *Williams v. Maynard*, 359 Md. 379, 394 (2000) ("The only actions which can be brought directly against a local government are those authorized by law which is separate and distinct from the LGTCA.").

The County is entitled to governmental immunity, as the employment and supervision of its employees is purely a governmental function. *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-507; *Lanford v. Prince George's County, MD*, 199 F. Supp. 2d 297, 302, 2002 WL 753932 (D. Md. 2002) (citing *Housing Authority of Baltimore City v. Bennett,* 359 Md. 356, 359 (2000)) ("Proposed Count XIV against the County and Cheverly for negligent hiring, training and retention similarly fails. The employment and supervision of police officers is a governmental function, and not proprietary or corporate. As such, governmental immunity protects the county from liability in tort for simple negligence."); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360 (2011) (Under Maryland law, county was entitled to governmental immunity from deaf detainee's tort claim for negligent training and supervision under the ADA, where detainee failed to name any individual county employee as a defendant.).

Moreover, the LGTCA expressly states that a local government may assert the same immunities as those its employees are entitled to invoke on a given tort claim.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-303 ("(e) A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee

for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle."). Therefore, as the employer of the Officer Defendants the County is so too entitled to invoke the aforementioned immunities (rooted in Public Official Immunity). *See* citations and discussion *supra*. Accordingly, the County is also immune from Plaintiffs' claims rooted in negligence.

Therefore, there is no legal or factual basis for a direct claim against Baltimore County. Accordingly, such claims must be dismissed.

### F. PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES UNDER § 1983 FAILS.

Finally, Plaintiffs' claim for punitive damages against the Defendants must fail. Punitive damages may be awarded in a § 1983 action only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). In *Kolstad v. Ada*, the Supreme Court explained the intent necessary for punitive damages: "[E]ligibility for punitive awards is characterized in terms of a defendant's motive or intent. Indeed, the justification of exemplary damages lies in the evil intent of the defendant. Accordingly, a positive element of conscious wrongdoing is always required." 527 U.S. 526, 538 (1999) (citations and internal quotation marks omitted). Thus, the case law emphasizes the need for bad motive or intent on the part of a defendant. At the very least, there must be conscious wrongdoing.

As explained in greater detail above, Plaintiffs' claims premised on negligence or gross negligence are insufficient to satisfy the standard of deliberate indifference and unreasonableness. *See* discussion and citations *supra*. Plaintiff has not alleged and cannot allege *any facts* to show that a Baltimore County custom or policy caused Mr. McCain's injury, much less, an evil motive

*on the part of the Defendants* or the intent *on the part of the Defendants* to deprive Mr. McCain of due process, or anything to support a claim for punitive damages against the Defendants. Accordingly, Plaintiff's claims for punitive damages against the Defendants, like the rest of the claims against the Defendants, must be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request their Motion to Dismiss be granted and that the Court dismiss Plaintiffs' Amended Complaint (ECF No. 39) with prejudice and without leave to amend.

Respectfully submitted,

**JAMES R. BENJAMIN, JR.**
Baltimore County Attorney

_____/s/_____
Alexa E. Ackerman
Assistant County Attorney
Federal Bar No.: 19943
Baltimore County Office of Law
400 Washington Avenue, Suite 219
Towson, Maryland 21204
Telephone: (410) 887-4420
Facsimile: (410) 296-0931
Email: aackerman@baltimoreountymd.gov

_____/s/_____
Andrea D. Smith
Federal Bar No.: 20532
Assistant County Attorney
Baltimore County Office of Law
400 Washington Avenue, Suite 219
Towson, Maryland 21204
Telephone: (410) 887-5635
Facsimile: (410) 296-0931
Email: asmith2@baltimoreountymd.gov

*Counsel for Defendants, Baltimore County*
*Government, Sean M. Dietz and Demetris L. Luck*