**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | |
|---|---|
| **THE ESTATE OF SPENCER MCCAIN** | * |
| By Personal Representative MILTON KEENE | |
| 1 Cahill Court | * |
| Windsor Mill, Maryland 21851 | |
| | * |
| **SHANNON SULTON as Mother and** | |
| **Next Friend of N.M.** | * |
| **Minor Child of the Decedent** | |
| 3327 Kerry Road | * |
| Baltimore, MD 21207 | |
| | * |
| **SHANNON SULTON as Mother and** | |
| **Next Friend of K.M.** | * |
| **Minor Children of the Decedent** | * |
| 3327 Kerry Road | |
| Baltimore, MD 21207 | * |
| | |
| **SHANNON SULTON as Mother and** | * |
| **Next Friend of S.M.** | |
| **Minor Child of the Decedent** | * |
| 3327 Kerry Road | |
| Baltimore, MD 21207 | * |
| | |
| and | * |
| | |
| **SHEILA SMITH** | * |
| 115 Morgan Run | |
| Snow Hill, MD 21863 | * |
| | |
| *Plaintiffs* | * |
| | |
| **v.** | * |
| | |
| **BALTIMORE COUNTY** | * |
| Baltimore County Office of Law | |
| Baltimore County Historic Courthouse | * |
| 400 Washington Avenue, #201 | |
| Towson, Maryland 21204 | * |
| | |
| **OFFICER SHENELL WILKES** | * |
| Baltimore County Office of Law | |
| Baltimore County Historic Courthouse | * |

400 Washington Avenue, #201
Towson, Maryland 21204                                    *

**OFFICER JONATHAN BESAW**                               *
Baltimore County Office of Law
Baltimore County Historic Courthouse                     *
400 Washington Avenue, #201
Towson, Maryland 21204                                    *

      And                 *

**OFFICER SHANNON STARGEL**                              *
Baltimore County Office of Law
Baltimore County Historic Courthouse      * Civil Case No.: 1:18-CV-02864-SAG
400 Washington Avenue, #201
Towson, Maryland 21204                                    *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiffs, Shannon Su1ton, mother and next friend of minors N.M., K.M., and S.M. (hereinafter, collectively, referred to as "the Minor Plaintiffs"), the Estate of Spencer McCain, and Sheila Smith, by and through their attorneys, Anton L. Iamele and IAMELE & IAMELE, LLP., who hereby incorporate their original Complaint for Wrongful Death and Demand for Jury by Trial, filed in the Baltimore County Circuit Court on June 25, 2018, wherein they sued Defendants Baltimore County, Officer Shenell Wilkes, in her personal and official capacity, Officer Jonathan Besaw, in his personal and official capacity, and Officer Shannon Stargel, in her personal and official capacity, as well as their Amended Complaint and Demand for Jury Trial filed in this Honorable Court In support of their stated causes of action Plaintiffs state further:

## JURISDICTION, VENUE & PARTIES

1.      This is an action for monetary damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, the common law of the State of Maryland, and the Maryland Declaration of Rights against Baltimore County Police Officers Wilkes, Besaw, and Stargel, in their individual and official capacities.

Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this court to entertain claims arising under Maryland State law. This action also includes wrongful death and survival claims pursuant to §§3-901 through 3-904 of the Courts and Judicial Proceedings Article of the Maryland Code Annotated and Maryland Rule 15-1001.

2.     It is alleged that the individual defendants named herein made an unreasonable seizure of the person of Decedent Spencer McCain, thereby violating his rights under the Fourth and Fourteenth Amendment of United States Constitution, as well as, Articles 24 and 26 Maryland Declaration of Rights. It is further alleged that the defendants named herein employed unwarranted and excessive force in effecting the seizure  described herein.

3.     That Shannon Sulton is, and Spencer McCain was, biological parents of Minor Plaintiffs N.M., K.M., and S.M. Ms. Sulton and her minor children are citizens of the State of Maryland with a primary residence in Baltimore City. The Minor Plaintiffs' father, Spencer McCain, deceased, had no other surviving issue. The McCain Children are primary beneficiaries in this action pursuant to §3-904(a) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland4.

4.     That Spencer McCain is also survived by his Mother, Shelia Smith, who is also a statutory beneficiary in this action pursuant to §3-904(a) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

5.     That, at all times relevant to this complaint, Defendant Officer Shenell Wilkes was a duly authorized agent, servant, and/or employee of the Baltimore County Police Department. At all times relevant to this Complaint, Defendant Wilkes was acting within the scope and course of her employment as a member of the Baltimore County Police Department. She is sued in her individual and official capacities.

6.     That, at all times relevant to this Complaint, Defendant Officer Shannon Stargel was a duly authorized agent, servant, and/or employee of the Baltimore County Police Department. At all times relevant to this Complaint, Defendant Stargel was acting within the scope and course of her employment as a member of the Baltimore County Police Department. She is sued in her individual and official capacities.

7.     That Defendant Officer Jonathan Besaw was a duly authorized agent, servant, and/or employee of the Baltimore County Police Department. At all times relevant to this Complaint, Defendant Wilkes was acting within the scope and course of his employment as a member of the Baltimore County Police Department. He is sued in his individual and official capacities.

8.     That Defendant Baltimore County is a municipality and the public employer of Officers Wilkes, Besaw, and Stargel, as well as various employees including 911 dispatchers and other emergency personnel.

9.     That all incidents leading to the wrongful death of the Decedent and resulting in compensable injury occurred in Baltimore County, Maryland at 3042 Hunting Ridge Drive, Owings Mills, Maryland 21117 (hereinafter, referred to as the "McCain Residence").

<u>ADMINISTRATIVE PREREQUISITES</u>

10.     That the Plaintiffs reallege and incorporate herein by reference all of the allegations contained in the preceding paragraphs.

11.     That a Notice of Claim was submitted to the Office of Law for Baltimore County.

12.     That the Office of Law for Baltimore County acknowledged receipt of the Notice of Claim form.

13.     That the Office of Law for Baltimore County has either denied liability or One Hundred Eighty (180) days have elapsed since the submission of the Notice of Claim.

FACTS CENTRAL TO PLAINTIFFS' CLAIMS

14.     That the Plaintiffs reallege and incorporate herein by reference all of the allegations contained in the preceding paragraphs.

15.     That on June 25, 2015, Officers Wilkes, Besaw, and Stargel responded to the McCain Residence as a result of multiple 911 emergency calls.

16.     That, prior to and at the time of the incident at issue in this action, Officers Wilkes, Besaw, and Stargel, as well as, their local precinct, were familiar with Decedent Spencer McCain and the McCain Residence due to prior calls for services to the location.

17.     That specifically, Officers Wilkes, Besaw, and Stargel had knowledge of the fact that Decedent Spencer McCain, the male living in the McCain Residence, was suffering from mental illnesses and/or was an emotionally disturbed person. That on the night of the subject incident, before the Defendant officers made entry into the McCain Residence, Defendant Besaw advised Defendants Stargel and Wilkes that he had personally responded to calls for service at the location on two prior occasions and that he understood Decedent Spencer McCain to be a diagnosed schizophrenic.

18.     Moreover, several of the 911 emergency calls that prompted the Officers' response indicated that Mr. McCain suffered from mental illness.

19.     On June 25, 2015, the first call for service to 3042 Hunting Ridge Drive, Owings Mills, Maryland 21117 was received by Baltimore County 911 at approximately 12:25 a.m. The caller reported a "disturbance." Defendants Besaw and Stargel responded to the call along with Baltimore County Police Officers Chavis and Summers. When the responding officers arrived at

5

the location there was no noise coming from the McCain Residence and they were unable to contact any of the residents. Accordingly, the call was "cleared" without contact.

20.     Approximately 30 minutes later, at or around 1:05 a.m., Baltimore County Police officers were dispatched to the residence for a second time. In conveying the call for service, the Baltimore County 911 dispatcher notified responding officers that Decedent Spencer McCain was a "Paranoid schizophrenic who has been hospitalized multiple times."

21.     The Baltimore County 911 dispatcher did not, however, alert the Baltimore County Crisis Response Unit about the situation at the McCain Residence, nor did he or she undertake any effort to direct members of the Baltimore County Crisis Response Unit and/or other officers with crisis intervention training to respond to the call for service.

22.     That Defendant Besaw was the first to arrive for the second call for service, followed by Defendant Stargel, and later by Defendant Wilkes. The group congregated at the door of the residence. No sounds were coming from within the McCain Residence when the Defendant officers arrived on the scene.

23.     The Defendant officers stood outside of the McCain Residence for approximately fifteen minutes before they attempted entry. The officers' decision to congregate outside of the premises shows the absence of exigency, emergency or other circumstances warranting the need for response with lethal force.

24.      During this time frame the Defendant Officers were immediately outside of the apartment, they discussed Decedent Spencer McCain's mental condition and prior calls for service to the location including an incident that had involved the Baltimore County Crisis Response Unit.

25.     This fifteen-minute delay allowed the congregating Defendant officers ample

6

time to attempt communication with individuals within the McCain Residence including

Decedent Spencer McCain; to undertake efforts to establish rapport with Decedent Spencer

McCain and/or de-escalate the situation; to determine if Decedent Spencer McCain was armed

and/or posed a threat of physical injury to any of the individuals present within the McCain

Residence; to summon the Baltimore County Mobile Response Unit; and/or to request that

officers with crisis intervention training respond to the scene. No such efforts were undertaken.

26.     Defendant Besaw, Stargel, and/or Wilkes did communicate with dispatch and

requested that additional units be directed to the McCain Residence while they were congregated

outside of the premises. However, they elected to make entry into the McCain Residence before

there was a response.

27.     Defendant Besaw, Stargel, and/or Wilkes unholstered and drew their respective

firearms before they entered the McCain Residence and/or had any contact with Decedent

Spencer McCain or any other person inside the McCain Residence.

28.     Defendant Besaw, Stargel, and/or Wilkes made entry into the premises with their

guns drawn notwithstanding the fact that they were equipped with less than lethal weapons

including OC pepper spray and tasers.

29.     Upon entry into the residence, Defendant officers were oriented toward Decedent

Spencer McCain, who was then standing in the living room area of the residence immediately in

front of a dining room table.

30.     Decedent McCain's daughter, Minor Plaintiff N.M., was simultaneously standing

at the threshold of her bedroom located in the front of the apartment immediately to the right of

the Defendant officers.

31.     Decedent Spencer McCain, who was unarmed, was sufficiently far away from

7

the Defendant officers that he did not pose any threat to their safety and could not reasonably be perceived to pose any threat to their safety.

32.     Decedent Spencer McCain was not in a position do physical harm to any other persons who were present in the McCain Residence.

33.     Decedent Spencer McCain had not engaged in any criminal activity and was not engaged in any criminal conduct when the Defendant officers made entry into the apartment.

34.     Decedent Spencer McCain had not made any threatening gesture or verbal utterances directed at the Defendant officers, and never had occasion to have any verbal interaction or communication with the entering officers.

35.     That immediately upon entry into the McCain Residence, Defendants Wilkes, Besaw, and Stargel opened fire on Decedent Spencer McCain. The combination of the three Defendant officers discharged at least eighteen rounds during this initial volley of shots.

36.     That the shooting was commenced when Decedent Spencer McCain posed no immediate threat to Defendants Wilkes, Besaw, and/or Stargel, and reasonable officers under the same circumstances would not have responded with deadly force.

37.     Rather than attempting any communication with Decedent McCain, utilizing verbal commands and/or undertaking efforts to de-escalate the encounter with a known emotionally disturbed person, Defendants Wilkes, Besaw, and/or Stargel aggressively escalated the situation by immediately pointing their weapons Decedent Spencer McCain and ultimately shooting him without justification and/or legal authority.

38.     Decedent Spencer McCain was struck by one or more of the projectiles and fell to the ground with his head oriented toward the kitchen and his feet oriented toward a couch.

39.     Defendant Stargel fell when she fired her weapon during the initial volley of

shots and dropped her firearm.

40.    Defendant Wilkes was also caused to fall when she fired her weapon during the initial volley of shots.

41.    When Defendant Besaw stopped firing his own firearm, he looked over to his right and noticed Defendant Stargel laying on her back by the entrance to the bedroom where Minor Plaintiff N.M. was standing. Defendant Besaw immediately notified Baltimore County dispatch that shots had been fired, a suspect was down, and there might be a wounded officer on the scene. This radio transmission was made 26 seconds after the Defendant officers had advised dispatch that they were entering the apartment.

42.    Defendant Wilkes was able to get back on her feet.

43.    Defendant Besaw directed Defendant Wilkes to continue to cover Decedent Spencer McCain who was alive and lying prostrate on the ground. Defendant Wilkes acted pursuant to this directive and stood over  Decedent Spencer McCain, at close range, with her firearm trained at him.

44.    Defendant Besaw located Defendant Stargel's firearm and helped her to her feet. She was not injured.

45.    Defendant Besaw then walked past the location where Decedent Spencer McCain was lying on the floor to a back bedroom of the apartment to clear the room. Shannon Sulton was found in the room holding her minor son. Defendant Besaw directed her to remain in the bedroom and then returned to the living room area of the apartment. Baltimore County Police Officer J. Summers, who arrived at the location following the initial volley of shots, replaced Defendant Besaw in the bedroom in which Shannon Sulton was located.

46.    When Defendant Besaw exited the rear bedroom, he located Defendant Stargel

9

standing in the front bedroom of the apartment hugging Minor Plaintiff N.M.

47.     Defendant Besaw and Stargel holstered their weapons and approached Decedent Spencer McCain, who was still lying on the ground, with the intention of placing him in handcuffs.

48.     The conduct of the various Baltimore County Police Officers that were present in the McCain residence, in among other things walking past Decedent Spencer McCain without handcuffing him, frisking him, and/or otherwise searching his person; initiating interviews and close personal contact with other persons present in the McCain Residence; and approaching Decedent Spencer McCain with their firearms holstered, demonstrates that they did not perceive Decedent Spencer McCain to be a threat to their safety after the first volley of shots.

49.     Defendant Wilkes nevertheless continued to stand over Decedent McCain with her service weapon directed at his torso.

50.     Decedent Spencer McCain was visibly injured, unarmed, and lying on the floor. He had not made any overtly threatening gestures directed toward Defendant Wilkes during the period of time that Defendant Besaw was clearing the back bedroom and/or while Defendant Stargel was standing in the front bedroom with Minor Plaintiff N.M.; he had not made any verbal statements and/or threats to the officers; and he had not otherwise resisted the Defendant officers or acted in an overtly threatening manner.

51.     Upon approach, Defendants Besaw and Wilkes directed Decedent Spencer McCain, who was then lying with arms loosely crossed in front of him, to produce his arms so they would be able to place him in handcuffs.

52.     When Decedent McCain moved his arms in response to the command, Defendant Wilkes fired her weapon and shot him once though the chest.

53.     Baltimore County Police Officer Summers, who was still in the back bedroom, yelled: "What was that?" The Defendant officers responded that they were okay.

54.     That the second shooting was commenced by Defendant Wilkes when Decedent Spencer McCain was lying on the ground and visibly injured, unarmed, and neither threatening nor resisting the Baltimore County Police officers who were present in the McCain Residence.

55.     That reasonable police officers confronted with the same circumstances would not have undertaken deadly force in the manner utilized by Defendant Wilkes. The second shooting was unjustified, improper and without legal justification.

56.     Baltimore County Fire Department Engine No. 311 and Medic No. 18 arrived at the scene of the shooting at approximately 1:42 a.m.

57.     Decedent McCain was laying on his left side and his hands were handcuffed behind his back when paramedics arrived at the scene. He was determined to be conscious and alert with an assessed Glasgow Coma Scale Score of 13. Police officers removed the handcuffs and medical treatment was initiated.

58.     The arriving paramedics observed a number of actively bleeding wounds about Decedent McCain's body including 1 wound to the right chest, 1 wound on the left chest, 1 wound on the posterior portion of left upper arm, 1 wound on the right posterior flank, 1 wound near the right to mid-line area of the right buttock and 1 on the upper right thigh.

59.     Decedent McCain was placed in the ambulance for transport to the University of Maryland R. Adam Cowley Shock Trauma Center.

60.     In route to the hospital, Decedent McCain began to exhibit difficulty breathing and had decreased lung sound in the left lung. Decompression was performed and Decedent McCain's respiratory function improved. Notwithstanding a measured SpO2 of 96%, paramedics

11

determined that they would divert to Sinai Hospital because of Decedent McCain's deteriorating condition.

61.    Decedent McCain arrived at Sinai hospital at approximately 2:10 a.m. He was transported to Trauma Room 1 where medical efforts continued for several hours.

62.    Decedent McCain ultimately succumbed to his injuries and was pronounced dead at approximately 6:38 a.m.

63.    In the interim, Baltimore County Police Officers searched the McCain Apartment in effort to determine if he had been armed when the Defendant officers entered the premises. No weapons were located at the McCain Residence. Defendant Spencer McCain was not armed at any time during his interaction with the Defendant officers.

64.    That the Officers use of lethal force under the circumstances was unreasonable. The Officers were aware of a domestic disturbance involving an emotionally disturbed person. .

65.    That furthermore, the Officers had no basis for using lethal force at all.

66.    That all of these events occurred while three (3) other individuals were in the home; namely, Ms. Shannon Sulton, the Mother of Spencer McCain's Children, and two of their minor children.

67.    As a direct result of the assault perpetrated by the Defendant Officers Wilkes, Besaw, and Stargel, Decedent McCain suffered serious, painful, and fatal injuries.

68.    In addition to the physical injuries described herein, Decedent McCain suffered the following injuries and damages:

       i.    Violation of his well-established constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution to be free from an unreasonable search and seizure of his person;

    ii.  Violation of his clearly established and well settled state constitutional rights under the Maryland Declaration of Rights Articles 24 and 26 including, but not limited to: Freedom from the unreasonable seizure of his person; and Freedom from the use of excessive, unreasonable and unjustified force against his person;

    iii.  Loss of his physical liberty;

    iv.  Conscious physical pain and suffering;

    v.  Emotional trauma and suffering, embarrassment, and mental anguish; and

    vi.  Loss of future earning potential.

69.    The actions of Defendant Officers Wilkes, Besaw, and Stargel violated the following clearly established and well settled federal and state constitutional rights of Decedent McCain including his right to:

    i.  Freedom from the unreasonable seizure of his person;

    ii.  Freedom from the use of excessive, unreasonable, and unjustified force against his person.

70.    Decedent Spencer McCain in no way consented to the described use of force by Defendant Officers Wilkes, Besaw, and Stargel; in no way provoked, contributed to, or in any way presented just or reasonable cause for Officers Wilkes, Besaw, and Stargel to act as they did; and did nothing to contribute to the unlawful and unjustified use of force carried out by Officers Wilkes, Besaw, and Stargel.

71.    The conduct of Defendant Officers Wilkes, Besaw, and Stargel was without legal justification or a proper purpose.

72.     Defendant Officers Wilkes, Besaw, and Stargel actions were also contrary to Baltimore County Police Department protocol in that they made no effort to communicate with and/or develop any rapport with Decedent Spencer McCain, offer aid, assess Decedent McCain's mental status, or contact dispatch for crisis intervention assistance.

73.     Rather than attempting any effort toward a non-violent resolution and/or de-escalate the encounter, Defendant Officers Wilkes, Besaw, and Stargel unholstered their weapons before making entry into the McCain Residence, immediately trained their weapons on Decedent McCain and commenced shooting before attempting any communication with Decedent McCain.

74.     The conduct that led to Decedent Spencer McCain's untimely passing was the result of a dangerous pattern of practice within the Baltimore County Police Department of using excessively deadly force when confronted with individuals with mental health disabilities and those experiencing mental health crises.

75.     Shootings by Baltimore County Police officers have persisted notwithstanding the availability of crisis intervention training and Baltimore County Police Department general orders instructing officers on how to respond to individuals suffering from mental health disabilities or experiencing mental health and emotional crises.

76.     Baltimore County Police Department General Order 1-3.18, "Mental Health/Emotional Crisis Related Issues," describes the steps that officers are required to take when encountering people experiencing mental health or emotional crisis-related issues. Pursuant to the order, Baltimore County police officers have a duty to: (1) "offer aid," including requesting that the Mobile Crisis team respond; and (2) "seek immediate medical attention." The Order provides a list of signs and symptoms of mental health-relates issue or emotional crisis,

including "irrational thoughts and/or actions, including suicidal ideations and attempts" and "depression."

77.     When encountering individuals exhibiting signs of mental illness, General Order 1-318.1 directs officers to "de-escalate situations through verbal and active listening skills" and to request crisis intervention assistance. Officers requiring assistance may (1) request the help of another officer who has received crisis intervention training, if the officer is not certified in such training; (2) request that the Mobil Crisis Team respond, "if the subject is believed to be experiencing mental related issues;" and/or (3) request that the Critical Incident Support Team respond, if the person is experiencing an emotional crisis due to a traumatic event.

78.     The Baltimore County Police Department also provides crises intervention training to select officers. The training instructs officers on how to identify signs of mental illness and substance abuse disorders and assist individual who are experiencing mental health issues or emotional crises.

79.     The Baltimore County Police Departments enactment of these policies and provisions of training to some officers demonstrates that the Baltimore County Police Department knew and understood the necessity of training in order for its officers to safely and successfully respond to encounters with people in crises.

80.     Despite notice of the necessity of such training, the Baltimore County Police Department has decided against training the majority of its officers on these policies.

81.     Upon information and belief, neither Defendant Officers Wilkes, Besaw, nor Stargel received any training on the handling of emotionally disturbed person and/or the manner of response to calls for service involving emotionally disturbed persons.

82.     Baltimore County Police Department's actions in not training Defendant Officers Wilkes, Besaw, nor  Stargel proximately caused the fatal shooting of Decedent Spencer McCain.

83.     The Baltimore County Police Department and  Baltimore County further lack any policy or training requiring dispatchers at the 911 Communications Center to direct service calls involving subjects experiencing mental health crises to officers trained in crises assistance, or to otherwise notify and/or request the assistance of the Mobile Crises Team or Critical Incident Support Team. Operator at the 911 Communication Center are generally the first to receive information from callers regarding the nature, threat, and severity of any emergency, and therefore are a critical link in the chain of emergency responses. The Baltimore County Police Department and Baltimore County's failure to implement such a policy or training contributes to the unjustified, unreasonable and excessive force against people experiencing mental health or emotional crises.

84.     Baltimore County Police Department officers have historically and routinely utilized excessive and deadly force encountering individuals experiencing mental health and emotional crises.

85.     Some of the examples of deadly force utilized by Baltimore County Police department officers against people suffering from emotional crises, both predating and postdating the subject occurrence in his case, are as follows:

**Odatei Mills – May 14, 2009 police involved shooting**

> Odatei Mills suffered from bipolar disorder. Mr. Mills and his family had requested the assistance of Baltimore County Police on several occasions, at the family homes located at 3611 Forest

16

Gove Avenue in Baltimore County, Maryland, when he was suffering from manic episodes.

On May 14, 2009, Mr. Mills contacted 911 and reported that he needed assistance because he was beginning a manic episode. When Baltimore County patrol officers responded to the scene, Mr. Mills came out from his house, laid on the ground and started making unintelligible comments about aliens. Mr. Mills' mother soon arrived at the scene of the home and advised the Baltimore County police officers who were present at the scene that her son was bipolar, that he was exhibiting the signs of a manic episode and that he needed help. The Baltimore County police officers accordingly knew, or reasonably should have known, that they were confronted with an emotionally disturbed person. They did not, however, undertake any efforts to de-escalate the situation.

Believing the responding officers were aliens, Mr. Mills began retreating into his home. He was initially stopped when officers struck him with what they deemed to be a "blockbuster" taser hit. Mr. Mills mother again advised the responding officers that her son was mentally ill. During the continuing encounter, Mr. Mills managed to make his way back into his home and the Crisis Response Team was contacted.

Before the Crisis Response Unit or any individuals trained in crisis response arrived at the scene, however, the Baltimore County police officers who were present at the scene made entry into the Mill residence. Mr. Mills was not armed nor was he actively threatening the responding officers or any other parties in the vicinity. Nevertheless, one of the officers fired his service weapon and struck Mr. Mills with several rounds. Mr. Mills was caused to go to the ground as a result of the initial volley of shots. After a pause of 20-30 seconds, while Mr. Mills was still lying face down on the ground and posing no threat whatsoever, the responding Baltimore County police officers recommenced the shooting. One of the officers performed a "hot re-load" where he ejected his clip and replaced it so that he could continue firing. Ultimately, two Baltimore County Police officers fired a total of 14 shots at Mr. Mills.

Mr. Mills did not die but suffered severe injuries and an amputation as a result of the police shooting. The episode gave rise to the matter styled *Odatei Mills v. Baltimore County, et al.*, United States District Court for the District of Maryland Case No. 1:12-CV-01362-CCB. During the course of the litigation, Mr. Mills introduced expert testimony demonstrating that the manner in which Baltimore County Police Department officers responded

to emotionally disturbed individuals was improper and that the
Baltimore County Police Department's training was inadequate.

**Korryn Gaines – August 1, 2016 police involved shooting death**

On August 1, 2016, Baltimore County Police officers
fatally shot Korryn Gaines in her apartment following a six-hour
standoff. Before the shooting Ms. Gaines was exhibiting obvious
symptoms of mental illness. The Baltimore County Police officers
who fatally shot her never requested the Mobile Crisis Unit or
requested the assistance of a crisis intervention team.

The happening gave rise to litigation in the Baltimore
County Circuit Court. In the litigation, Ms. Gaines's family alleged
the responding Baltimore County police officers shot Gaines due
to a loss of patience and personal frustration with Gaines, not out
of fear for life or safety. Testimonies at the trial made a possible
link between Gaines' "impulsive behaviors and anger" and lead
poisoning that had caused a loss of IQ points, neurological
impairments, trouble concentrating, and behavioral issues.

**Emanuel Oates – February 19, 2019 police involved shooting**

On February 19, 2019. Baltimore County Police
Department received a call about a suspected shoplifting from a
dollar store. Mr. Oates was identified as the perpetrator of the
crime though it was later determined that he had possession of a
receipt for the items purchased at the dollar store. Mr Oates, who

19

was exhibiting signs of obvious emotional or mental distress , fled from the responding officers. Mr Oates was later corralled at a grocery store by the four responding Baltimore County police officers. In the final moments of the encounter, he was quoting the bible and walking slowly toward the officers. The four officers on scene did not call for the Mobile Crisis Team. Moreover, rather than retreating, utilizing non-lethal force, attempting to establish any kind of rapport, or otherwise defusing the situation they had created when they chased Mr. Oates into grocery store, the responding officers fired upon Mr. Oates. When the shooting was commenced, Mr. Oates had not been threatening the officers or any third party at the grocery store. Mr. Oates died from his wounds the following day.

**Scott Robertson – June 22, 2019 police involved shooting**

On June 22, 2019, the Baltimore County Police Department received a call for service concerning Scott Robertson. Angelica Ullsperger had called the police hoping they would be able to help calm him. She reported that Mr. Robertson was inside of a house and armed with a gun. Upon arrival Baltimore County Police officers determined that Mr. Robertson suffered from depression, had been drinking and was alone in the basement of the home. Ms. Ullsperger advised the responding Baltimore County police officers that Mr. Robertson suffered from PTSD and would likely

become agitated if they approached the house. The responding

officers did not wait for the Mobile Crisis Unit or officers who had

received training concerning handling of situations involving

emotionally disturbed individuals to arrive on the scene. Instead,

they ordered Mr. Robertson out of the home and shot him four

times when he attempted to comply.  Mr. Robertson subsequently

returned into his home. Because the responding police officers did

not want to make entry into the premises, he bleed to death.

**Eric Sopp – November 26, 2019 police involved shooting**

On November 26, 2019, Catherine Sopp called the

Baltimore County Police Department to help her son,  Eric Sopp,

who was suffering from a depressive episode. Mrs. Sopp advised

Baltimore County dispatch that her son was suicidal and was

driving a Red Toyota Camry. The dispatcher issued a call for a

suicidal subject but did not send the Mobile Crises Team or

otherwise request the assistance of trained crisis intervention

personnel.

A Baltimore County police officer later spotted Mr. Sopp's

vehicle, initiated pursuit and effected a traffic stop. The responding

officer made no attempt to develop a rapport with Mr. Sopp, offer

aid, assess Mr. Sopp's mental status, or contact the dispatcher for

crises intervention assistance. Rather than acting to de-escalate the

situation, the responding officer kept his service weapon trained at

Mr. Sopp. Mr. Sopp advised the responding officer that he was
getting out of his vehicle. Approximately one minute later, the
responding police officer shot Mr. Sopp eight times. The shooting
was fatal.

It is the knowledge and belief of Plaintiffs and therefore averred as fact that there have been
other occasions in which members of the Baltimore County police  Department have
unreasonably directed deadly force at emotionally disturbed persons.

86.     Defendant Officers Wilkes, Besaw, and Stargel actions, as alleged in this case and
the instant pleading, were performed pursuant to the de facto custom and policy within the
Baltimore County Police Department of unreasonably directing excessive force against
emotionally disturbed persons.

87.     The conduct that resulted in Decedent McCain death was the result of a historical
and dangerous practice within the Baltimore County Police Department of quickly directing
lethal force at emotionally disturbed individuals and/or utilizing excessive deadly force against
individuals with mental health disabilities and those experiencing mental health crises.

88.     The circumstances in the instant case are consistent with the pattern of response
by the Baltimore County Police Department that has persisted since at least 2006. The pattern
has continued unabated because the Baltimore County Department has failed to properly
supervise or discipline its officers when they utilize excessive force against people in mental or
emotional distress.

89.     It is the knowledge and belief of the Plaintiffs, and therefore averred as fact, that
none of the Defendant officers in this case, nor the Baltimore County police officers involved in
the encounters with Odatei Mills,  Korryn Gaines, Emanuel Oates, Scott Robertson or Eric Sopp

were disciplined in connection with the described happenings. In each case the Baltimore County Police Department conducted perfunctory investigations intended to quickly clear the shooting officers of any wrongdoing and then returned the officers to duty without further action.

90.     The Baltimore County Police Department's historical and ongoing failure to discipline or otherwise take supervisory action in response to its officers' unjustified use of force against emotionally disturbed persons and/or individuals exhibiting signs of mental and emotional distress has served as a communication to its officers that it condones such actions and has made such conduct substantially more likely to be repeated.

91.     The decisions not to train, supervises or discipline Baltimore County Police Department officers, as described herein, was consciously approved by the department's policy makers. The failures demonstrate, and were the result of, deliberate indifference to officers' violations of citizens' rights to be free from excessive force.

92.     The Baltimore County Police Department's decision against properly training its officers proximately caused Spencer McCain's death.

93.     Despite actual or constructive knowledge that its officers customarily used unreasonable and deadly force in encounters with people with mental illness and/or in crisis, the Baltimore County Police Department did not act to remedy these abuses. It thereby perpetuated the unlawful practices that proximately resulted in the death of Spencer McCain.

## COUNT I— DEPRIVATION OF RIGHTS UNDER 42 U.S.C.A. § 1983 – FOURTH AND FOURTEENTH AMENDMENT
(Estate of Spencer McCain v. Defendants Shenell Wilkes, Jonathan Besaw, and Shannon Stargel)

94.     Plaintiffs reallege and incorporate paragraphs 1-93 herein by reference.

95.     At all times relevant to this Complaint, Decedent Spencer McCain had rights afforded to him by the Fourth and Fourteenth Amendments to the United States Constitution not

to have his person or property unlawfully searched, seized, or detained in an unreasonable manner; not to be deprived of his liberty without due process of the law; not to be subjected to excessive force during the course of an arrest; not to be unreasonably denied necessary medical treatment; and not to be summarily punished.

96.     At all times relevant herein, Defendant Officers Wilkes, Besaw, and Stargel were acting under the color of State and local law and as members of the Baltimore County Police Department. Their conduct therefore triggers 42 U.S.C. §1983.

97.     Defendant Officers Wilkes, Besaw, and Stargel actions and omissions deprived Decedent McCain of his clearly established and well-settled constitutional rights.

98.     Defendant Officers Wilkes, Besaw, and Stargel knowingly acted to deprive the Plaintiff of his constitutional rights.

99.     The actions of Defendants Wilkes, Besaw, and Stargel deprived Spencer McCain of rights and privileges secured and protected by the United States Constitution, specifically the Fourth Amendment right to be free from excessive use of force against a plaintiffs person during the course of an arrest, freedom from unreasonable searches and seizures, freedom from a deprivation of life and liberty without due process of law, and freedom from summary punishment.

100.    Considering the totality of the circumstances, Defendants Wilkes, Besaw, and Stargel's conduct, in among other things initiating the first volley of shots, was unjustified and unreasonable. Defendants Wilkes, Besaw, and Stargel knew and understood thar Decedent Spencer McCain was an emotionally disturbed person, but made no effort to communicate with him, build rapport and/or deescalate the situation before commencing the use of deadly force. These defendant officers likewise did not issue any verbal commands, attempt to employ less

24

than lethal force alternatives, or undertake any effort to determine if Decedent Spencer McCain posed some risk to their safety, before they commenced the shooting. Reasonable police officers in the same situation would not have concluded that the Decedent Spencer McCain was unarmed and posed an immediate threat justifying the use of deadly force or that deadly force was necessary in light of the ongoing circumstances at the McCain residence.

101.    Considering the totality of the circumstances, Defendant Wilkes' conduct, in among other things shooting Decedent Spencer McCain after the initially volley of shots had been discontinued and while he was visibly injured, lying prostrate on the ground, unarmed and physically incapable of threatening the defendant police officers or any third persons at the scene, was also unjustified and unreasonable. Reasonable police officers in the same situation would not have concluded that the Decedent Spencer McCain posed an immediate threat justifying the use of deadly force or that deadly force was necessary in light of the ongoing circumstances at the McCain residence.

102.    Defendants Wilkes, Besaw, and Stargel knowingly acted to deprive Decedent Spencer McCain of his Constitutional Rights maliciously and with reckless disregard. Defendants Wilkes, Besaw, and Stargel further conspired with each other to act in an unlawful manner that would violate Decedent Spencer McCain's Constitutional Rights.

103.    The Estate of Spencer McCain and statutory beneficiaries to the same claim damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendant Officers Wilkes, Besaw, and Stargel for violation of Decedent McCain's constitutional rights under color of law.

COUNT II — DEPRIVATION OF RIGHTS
UNDER ARTICLES 24 AND 26 OF THE
MARYLAND DECLARATION OF RIGHTS
(Estate of Spencer McCain v. Defendants Shenell Wilkes, Jonathan Besaw, and Shannon Stargel)

104.     That the Plaintiffs reallege and incorporate herein by reference all of the allegations contained in paragraphs 1 through 103.

105.     As a direct and proximate result of the actions and omissions of Defendant Wilkes, Besaw, and Stargel, described herein, all of which were committed under the color of their authority as members of the Baltimore County Police Department and while acting in the capacity of duly authorized police officer, Decedent McCain was further deprived of certain "State Rights" established by way of Article 24 and 26 of the Maryland Declaration of Rights.

106.     As a result of the above-described acts attributed to Defendants Shenell Wilkes, Jonathan Besaw, and Shannon Stargel, Decedent Spencer McCain was deprived of rights and immunities secured to him under the in particular, his right not to be subjected excessive force during the course of an ongoing arrest and his right not be deprived of his liberty. That for the reasons discussed above, the Defendants have also violated the protections, privileges, and rights granted to the Spencer McCain under the laws of the State of Maryland.

107.     As a direct consequence in result of the actions and omissions of Defendants Wilkes, Besaw, and Stargel described herein, Decedent Spencer McCain was caused to suffer severe physical injuries, emotional and physical suffering and an untimely death.

COUNT III — DEPRIVATION OF RIGHTS UNDER 42 U.S.C.A. 1983
FOR INADEQUATE SUPERVISION AND DISCIPLINE
(*Monell* Claim by the Estate of Spencer McCain v. Baltimore County )

108.     That the Plaintiffs reallege and incorporate herein by reference all of the allegations contained in paragraphs 1-107 as if restated herein.

109.     That at the time of the fatal shooting underlying this case, the Baltimore County Police Department had developed and maintained policies or customs exhibiting deliberate

indifference to the constitutional rights of citizens in Baltimore County suffering from mental illness, which caused the violation of Decedent Spencer McCain's rights.

110.   At all times relevant to this Complaint, Defendant Baltimore County, through Baltimore County police administration, supervisory personnel, and other police officers knew and understood that it had inadequate policies and procedures in place for calls involving individuals suffering from mental illness and/or emotionally disturbed individuals.

111.   That prior to the time of the incident at issue in this suit, Defendant Baltimore County's failure to the appropriately train, supervise, and monitor officers who had occasion to respond to calls for service involving individuals suffering from mental illness and/or emotionally disturbed individuals had resulted in police involved shootings. As a result, the Baltimore County Police Department had actual or constructive notice of a need to more thoroughly train its officers; utilize the Crisis Response Unit in all calls with involving individuals known to suffer from mental illness and/or to emotionally disturbed individuals; and to more thoroughly supervise officers who might be caused to encounter individuals known to suffer from mental illness and/or to emotionally disturbed individuals.

112.   That it was the policy and/or custom of Baltimore County Police Department to fail to exercise reasonable care in hiring its police officers, thereby failing to adequately prevent constitutional violations on the part of its police officers.

113.   That it was the policy and/or custom of the Baltimore County Police Department to inadequately supervise and train its police officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

114.   That as a result of the above described policies and customs, police officers of Baltimore County believed that their actions would not be properly monitored by supervisory

officers and that misconduct would not be investigated or sanctioned but would be tolerated.

115.    That the actions of Defendants Wilkes, Besaw, and Stargel were undertaken pursuant to a customs or usages within the Baltimore County Police Department of quickly directing excessive and deadly force at emotionally disturbed persons and or persons suffering from mental illness and mental or emotional crises; and also of failing to utilize the Mobile Response Unit and/or call upon and/or utilize officers who were trained for encounters involving emotionally disturbed persons.

116.    That the above described policies and customs demonstrate a deliberate indifference on the part of Baltimore County to the constitutional rights of persons within the Baltimore County, and were the cause of the violations of Plaintiffs rights alleged herein.

<u>COUNT IV— WRONGFUL DEATH</u>
(Shannon Sulton, Mother and Next Friend of minor plaintiffs N.M., K.M., and S.M. and Sheila Smith v. All Defendants)

117.    That the Plaintiffs reallege and incorporate all preceding paragraphs as if restated fully herein.

118.    That the death of Spencer McCain was caused by the negligent use of excessive and/or lethal force.

119.    That §§3-904 of the Courts and Judicial Proceedings Article of the Maryland Code Annotated defines the terms for a wrongful death action.

120.    That according to said section, an action under this subtitle shall be for the benefit of the wife, husband, parent, and child of the deceased person.

121.    That according to subsection (e) of the aforementioned section, for the death of a child, who is not described under subsection (d) of this section, or a parent of a child, who is not a minor child, the damages awarded under subsection (c) of this section are not limited or

restricted by the "pecuniary loss" or "pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable.

122.    Defendant Wilkes, Besaw, and Stargel deviated from acceptable standards and acted unreasonably during in the time leading up to and then during the shooting incident described herein.

123.    Defendant Baltimore County likewise deviated from acceptable standards and acted unreasonably. At all times relevant to this Complaint, Defendant Baltimore County had inadequate training, supervision and policies and procedures in place concerning police encounters with citizens suffering from mental illness and/or emotionally disturbed individuals. By way of prior dealing between members of the Baltimore County Police Department and citizens suffering from mental illness and/or emotionally disturbed individuals, Defendant Baltimore County had actual and/or constructive knowledge that the inadequacies in its training program, supervision and policies gave rise to an unreasonable risk of injury to citizens including Decedent Spencer McCain. Defendant Baltimore Count is also vicariously liable for the acts and omissions of its actual and apparent agents, servants, and/or employees including Defendants Wilkes, Besaw, and Stargel.

124.    Defendants Baltimore County, Wilkes, Besaw and Stargel were negligent, in among other things, failing to act as reasonably competent law enforcement personnel would have acted under the same or similar circumstances; failing to adequately train, supervise, and instruct their agents, servants, and employees; failing to have in pace proper policies and procedures regarding and/or concerning the operation of the Baltimore County Crisis Response Team; failing to have in place proper policies and procedures concerning interactions with

citizens with known mental health illnesses and/or citizens suffering from emotional disturbances; failing to the identify Decedent McCain as an individual in need of psychiatric treatment and attention; failing to recognize that Decedent McCain was unarmed and that he did not otherwise pose a threat to law enforcement personnel on the scene; failing to respond appropriately to the circumstances existing at the 3042 Hunting Ridge Drive; and in employing lethal force against a subdued, injured, and nonthreatening citizen. Defendants also committed other acts of negligence which are not expressly enumerated herein.

125. Decedent Spencer McCain was not contributorily negligent and did not assume the risk of any injury.

126. That as a direct and proximate result of the negligent conduct of Defendants Baltimore County, Wilkes, Besaw, and Stargel, Plaintiff Sheila Smith, as the biological mother of Decedent Spencer McCain, suffered and sustained pecuniary loss; mental anguish; emotional pain and suffering; loss of monetary earnings, contributions and support; loss of services; loss of comfort; loss of solace; loss of society; loss of companionship; loss of protection; loss of filial care; loss of attention; loss of advice; loss of counsel; and loss of guidance and are entitled to recover such damages as a consequence of her son's tragic and untimely death.

127. That Minor Plaintiffs N.M., K.M. and S.M., are entitled to recover damages for their father's tragic and untimely death. As a direct and proximate result of the negligent conduct of Defendants Baltimore County, Wilkes, Besaw, and Stargel, Minor Plaintiffs N.M., K.M. and S.M,, as the children of the deceased, suffered and sustained pecuniary loss; mental anguish; emotional pain and suffering; loss of monetary earnings, contributions, and support; loss of services; loss of comfort; loss of solace; loss of society; loss of companionship; loss of protection; loss of filial care; loss of attention; loss of advice; loss of counsel; and loss of

guidance and is entitled to recover such damages as a consequence of his father's tragic and untimely death.

## COUNT V— SURVIVAL ACTION
### (Estate of Spencer McCain v. All Defendants)

128.    That the Plaintiffs reallege and incorporate by reference all preceding paragraphs as if restated fully herein.

129.    Pursuant to MARYLAND ANNOTATED CODE, *Estates and Trusts Article* § 7-401(y), Plaintiff Milton Keene is authorized to bring a survival action as the Personal Representative of the Estate of Spencer McCain. As stated above, Defendants Wilkes, Besaw, and Stargel deviated from acceptable standards and acted in unreasonably during in the time leading up to and then during the incident described herein.

130.    Defendant Baltimore County likewise deviated from acceptable standards and acted unreasonably. At all times relevant to this Complaint, Defendant Baltimore County had inadequate training, supervision and policies and procedures in place concerning police encounters with citizens suffering from mental illness and/or emotionally disturbed individuals. By way of prior dealing between members of the Baltimore County Police Department and citizens suffering from mental illness and/or emotionally disturbed individuals, Defendant Baltimore County had actual and/or constructive knowledge that the inadequacies in its training program, supervision and policies gave rise to an unreasonable risk of injury to citizens including Decedent Spencer McCain. Defendant Baltimore Count is also vicariously liable for the acts and omissions of its actual and apparent agents, servants, and/or employees including Defendants Wilkes, Besaw, and Stargel.

131.    Defendants Baltimore County, Wilkes, Besaw, and Stargel were negligent, in among other things, failing to act as reasonably competent law enforcement personnel would

31

have acted under the same or similar circumstances; failing to adequately train, supervise, and instruct their agents, servants, and employees; failing to have in pace proper policies and procedures regarding and/or concerning the operation of the Baltimore County Crisis Response Team; failing to have in place proper policies and procedures concerning interactions with citizens with known mental health illnesses and/or citizens suffering from emotional disturbances; failing to the identify Decedent McCain as an individual in need of medical treatment and attention; failing to recognize that Decedent McCain was unarmed and that he did not  otherwise pose a threat to law enforcement personnel on the scene; failing to respond appropriately to the circumstances existing at the 3042 Hunting Ridge Drive, and utilizing force against a subdued, injured, and nonthreatening citizen. Defendants also committed other acts of negligence which are not expressly enumerated herein.

132.   That as a direct and proximate result of the Defendants' actions against the Decedent, Decedent sustained extreme pain, suffering, and mental distress between the time of the incident and the time of his death.

**WHEREFORE**, Plaintiffs the Estate of Spencer McCain, Shannon Sulton as Mother and Next Friend of minor plaintiffs N.M., K.M., and S.M., . and Sheila Smith hereby request that this Honorable Court:

(A)      Award the Plaintiffs actual, compensatory, and consequential damages in an amount to be determined at trial against Defendants Shenell Wilkes, Jonathan Besaw, Shannon Stargel, and Baltimore County, jointly and severally;

(B) Award Plaintiffs punitive damages in an amount to be determined at trial against Defendants Shenell Wilkes, Jonathan Besaw, Shannon Stargel;

(C) Award costs of this action to the Plaintiffs;

(D) Award the Plaintiffs reasonable attorney's fees and costs incurred in pursuing this action, as provided under 42 U.S.C. §§ 1983 and 1988; and

(E) Award such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,

IAMELE & IAMELE, LLP

_____ - s- _____
Anton L. Iamele, Federal Bar No. 14845
201 North Charles Street, Suite 400
Baltimore, Maryland 21201
410-779-6160 (Telephone)
410-779-6161 (Facsimile)
aiamele@iamelelaw.com
*Counsel for Plaintiffs*

## **PRAYER FOR JURY TRIAL**

Plaintiffs hereby requests that all issues raised in this Complaint be decided by way of a jury trial.

_____ - s- _____
Anton L. Iamele

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this **7th** day of **December, 2020**, a copy of the foregoing proposed Second Amended Complaint was served, in conjunction with Plaintiff's Motion for Leave to File Second Amended Complaint, by way of this Court's electronic delivery system to the following:

> Alexa Ackerman, Assistant County Attorney
> Andrea D. Smith, Assistant County Attorney
> Baltimore County Office of Law
> 400 Washington Avenue, Suite 219
> Towson, MD 21204

_____/s/_____
Anton L. Iamele
