**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DISTRICT)**

SHANNON SULTON, ET AL.                *

          *Plaintiff*              *

   v.                          *

BALTIMROE COUNTY, MARYLAND, ET AL.   *

        *Defendant*           * Civil Case No.: 1:18-CV-02864-SAG

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

NOW COME the Plaintiffs to this action, by and through Anton L. Iamele and IAMELE & IAMELE, LLP, who hereby oppose Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. In support of this Opposition, Plaintiffs assert that they have set forth sufficient factual allegations to make a plausible showing that the claims included within their Second Amended Complaint are valid. Plaintiffs also incorporate the arguments set forth in their Opposition to Defendants' Motion to Dismiss their First Amended Complaint (ECF 45) as if restated herein, and state further:

**I.**     **Relevant Background**

This case, which concerns the police involved shooting death of Spencer McCain, was initiated in the Baltimore County Circuit Court on June 25, 2018. The original Complaint included the following causes of action: Count I – Assault; Count II – Deprivation of Rights Under 42 U.S.C.A. § 1983; Count III – Deprivation of Rights Under the Maryland Declaration of Rights; Count IV – Deprivation of Rights under 42 U.S.C.A. § 1983 (*Monell* Claim); Count V – Respondeat Superior; Count VI – Wrongful Death; and Count VII – Survival Action. On September 14, 2018, the named Defendants removed this case to this Honorable Court on the

basis of federal question jurisdiction. On December 3, 2018, Defendants Shenell Wilkes, Jonathan Besaw, Shannon Stargel and Baltimore County answered the Original Complaint in lieu of filing a dispositive motion. (ECF 10).

On August 20, 2020, the undersigned filed a Motion for Leave to File Plaintiffs' First Amended Complaint and a proposed First Amended Complaint. (ECF 32) On October 8, 2020, this Honorable Court allowed Plaintiffs the requested leave after concluding that "the proposed amended complaint, as compared to the original complaint, reveals significant additions to the factual allegations, but little change to the substantive counts and legal theories asserted." (ECF 37) Plaintiffs omitted their previously plead claims for "Assault" and "Respondeat Superior" from the First Amend Complaint, leaving the following reordered causes of action: Count I – Deprivation of Rights Under 42 U.S.C.A. § 1983; Count II – Deprivation of Rights Under the Maryland Declaration of Rights; Count III – Deprivation of Rights under 42 U.S.C.A. § 1983 (*Monell* Claim); Count IV – Wrongful Death; and Count V – Survival Action.

Defendants subsequently asserted a "Motion to Dismiss Plaintiff's Amended Complaint" and Plaintiffs responded by requesting leave to further amend their pleading. On January 11, 2021, this Honorable Court granted leave and accepted Plaintiffs' Second Amended Complaint. By way of the modified pleading, Plaintiffs specified that Count I "Deprivation of Rights Under 42 U.S.C.A. § 1983" and Count II "Deprivation of Rights Under the Maryland Declaration of Rights" were causes of action brought by the Estate of Spencer McCain against Defendants Shenell Wilkes, Jonathan Besaw and Shannon Stargel. Plaintiffs also set forth additional salient factual averments in support of the Count III "Deprivation of Rights under 42 U.S.C.A. § 1983 (*Monell* Claim)" Finally, Plaintiffs averred additional facts in support of all causes of action

including Count IV "Wrongful Death" and Count V "Survival Action" which persisted in essentially the same format as they had been plead in Plaintiffs' Original Complaint.

Defendants have now moved to the dismiss Plaintiffs' Second Amend Complaint. By way of the pending dispositive motion, Defendants not only argue that the Plaintiffs have failed to set forth sufficient factual allegations in support of their claims, but also request that this Honorable Court evaluate the merits of each included claim and available defenses. Plaintiffs respectfully request that this Honorable Court allow the litigation to proceed based upon the present filing as these requests are premature.

## II.    <u>Argument</u>

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; '<u>importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.</u>'" *Edwards v. City of Goldsboro,* 178 F.3d 231, 243-44 (4th Cir. 1999)(quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) (emphasis added); See also *Swierkiewicz v. Sorema N.A.*, 524 U.S. 506, 511 (2002)("The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") "For [this] reason, such motions are granted sparingly and with caution." *See Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 511 F.2d 678, 680 (4th Cir. 1975) *rev'd* on other grounds, 425 U.S. 738, 96 S. Ct. 1848, (U.S.N.C. 1976).

"[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing reasonable inferences from those facts in plaintiff's favor, it appears certain that plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards* 178 F.3d at 44; See also *Owens v. Baltimore City State's Attorney's Office*, 767 F. 3d 379, 396 (4th Cir. 2014) ("Dismissal under Rule 12(b)(6) is

appropriate only if a plaintiff fails to state a claim that is plausible on its face."); *Ibarra v. United States*, 120 F. 3d 472, 474 (4th Cir. 1997) (an evaluating court must "accept the well-plead allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff"); *Flood v. New Hanover County*, 125 F. 3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F. 3d 213, 217-18 (4th Cir. 1994)) ("to dismiss a complaint pursuant to Rule 12(b)(6), the court must consider the well-pleaded material allegations in the light most favorable to the Plaintiff and accept those factual allegations as true.") Moreover, in case such as the instant matter where a "Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, '[the Court] must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to <u>relief under any legal theory which might plausibly suggested by the facts alleged</u>.'" *Edwards* 178 F.3d at 44 (quoting *Harrison v. United States Postal Serv.* , 840 F.2d 1149, 1152 (4 the Cir. 1988))(emphasis in original).

The dismissal requested by the Defendants is not warranted in this case.

## A. <u>The actions for excessive force contained in the Second Amended Complaint (Count I –Deprivation of Rights Under 42 U.S.C.A. § 1983 and Count II – Deprivation of Rights Under the Maryland Declaration of Rights) are sufficiently plead and facially plausible.</u>

Plaintiffs' Second Amended Complaint centers on their allegations that Defendant Baltimore County Police Officers, Shenell Wilkes, Jonathan Besaw, and Shannon Stargel "made an unreasonable seizure of the person of Decedent Spencer McCain, thereby violating his rights under the Fourth and Fourteenth Amendment of United States Constitution, as well as, Articles 24 and 26 Maryland Declaration of Rights." (ECF 53, Second Amended Complaint, ¶ 2) According to the Defendants, these counts are inadequate because "Plaintiffs' Second Amended Complaint merely asserts claims based simply upon the fact that deadly force was used and Mr.

McCain was mentally ill, without any facts specific to the circumstance of the incident that support the allegation that the degree of force used was unlawful"; and therefore the claims of excessive force should be interpreted as "nothing more than glorified negligence claims." (Defendants Motion to Dismiss Second Amended Complaint, pp. 9, 6)  Defendants, in advancing these arguments, ask this Honorable Court to ignore the majority of the factual averments contained in the controlling pleading.

All of Plaintiffs' causes of action stem from a police shooting that occurred on June 25, 2015, when Defendant Baltimore County Police officers, Besaw, Stargel, and Wilkes, responded to call concerning a "disturbance" at "Mr. McCain's residence, 3042 Hunting Ridge Drive, Owings Mills, Maryland 21117." (ECF 53, Second Amended Complaint, ¶ 19) There is no allegation of a criminal occurrence or basis for arrest before and/or during the described police response. Plaintiffs maintain that the responding officers deprived Decedent "McCain of rights and privileges secured and protected by the United States Constitution, specifically the Fourth Amendment right to be free from excessive use of force against a [] person during the course of an arrest, freedom from unreasonable searches and seizures, freedom from a deprivation of life and liberty without due process of law, and freedom from summary punishment." (ECF 53, Plaintiffs' Second Amended Complaint, ¶ 99) Plaintiffs assert further assert that the defendant officers "knowingly acted to deprive Decedent Spencer McCain of his Constitutional Rights maliciously and with reckless disregard"; that their "conduct… was without legal justification or a proper purpose";  and that "[r]easonable police officers in the same situation would not have concluded that the Decedent Spencer McCain … posed an immediate threat justifying the use of deadly force or that deadly force was necessary in light of the ongoing circumstances at the McCain residence."  (ECF 53, Plaintiffs' Second Amended Complaint, ¶¶ 102, 70 and 100)

These claims of excessive force rest on factual averments which do not concern, and are wholly independent from, Decedent McCain's mental health status. Within the Second Amended Complaint, Plaintiffs aver that "Defendants Besaw, Stargel, and/or Wilkes unholstered and drew their respective firearms before they entered the McCain Residence and/or had any contact with Decedent Spencer McCain" notwithstanding their possession of "less than lethal weapons including OC pepper spray and tasers." (ECF 53, Second Amended Complaint, ¶¶ 27 & 28) Plaintiffs also aver that, once inside of the McCain residence, the defendant officers were "oriented toward Decedent [] McCain" "who was unarmed, was sufficiently far away from the Defendant officers that he did not pose any threat to their safety and could not reasonably be perceived to pose any threat to their safety." (ECF 53, Second Amended Complaint, ¶¶ 29-31) Plaintiffs further support their assertion that the use of force was unwarranted with factual averments that Decedent McCain "was not in a position do physical harm to any other persons who were present in the McCain Residence"; "had not engaged in any criminal activity and was not engaged in any criminal conduct"; and "had not made any threatening gesture or verbal utterances directed at the Defendant officers, and never had occasion to have any verbal interaction or communication with the entering officers." (ECF 53, Second Amended Complaint, ¶¶ 32-34)

The Second Amended Complaint includes additional factual averments demonstrating that the shooting was initiated without provocation. Plaintiffs aver that, "immediately upon entry" into the McCain residence, the "three Defendant officers" "opened fire on Decedent [] McCain" and "discharged at least eighteen rounds during this initial volley of shots." (Second Amended Complaint, ¶¶ 35, 71) Plaintiffs indicate that "Decedent Spencer McCain was struck by one or more of the projectiles and fell to the ground with his head oriented toward the kitchen

and his feet oriented toward a couch."  (Second Amended Complaint,  ¶ 38) Plaintiffs explain

that the force was unwarranted because "[n]o weapons were located at the McCain Residence"

and Decedent "McCain was not armed at any time during his interaction with the Defendant

officers."  (ECF 53, Second Amended Complaint,  ¶ 65)

Plaintiffs also detail a second, temporally separate, shooting that was subsequently

initiated by Defendant Wilkes. (ECF 53, Second Amended Complaint, ¶ 54) Plaintiffs aver that,

after the first volley of shots, Decedent McCain "was alive and lying prostrate on the ground."

(Second Amended Complaint, ¶43) Plaintiffs state that "Defendant Besaw and Stargel [had]

holstered their weapons and approached Decedent Spencer McCain, who was still lying on the

ground, with the intention of placing him in handcuffs."  (Second Amended Complaint,  ¶ 47) At

the time, "Decedent [] McCain was visibly injured, unarmed, and lying on the floor. [Decedent

McCain] had not made any overtly threatening gestures directed toward Defendant Wilkes

during the period of time that Defendant Besaw was clearing the back bedroom and/or while

Defendant Stargel was standing in the front bedroom with Minor Plaintiff N.M.; [Decedent

McCain] had not made any verbal statements and/or threats to the officers; and [Decedent

McCain] had not otherwise resisted the Defendant officers or acted in an overtly threatening

manner." (ECF 53, Second Amended Complaint,  ¶ 50) "Defendants Besaw and Wilkes directed

Decedent [] McCain, who was then lying with arms loosely crossed in front of him, to produce

his arms so they would be able to place him in handcuffs." (ECF 53, Second Amended

Complaint,  ¶ 51) "When Decedent McCain moved his arms in response to the command [to

produce his arms], Defendant Wilkes fired her weapon and shot him once though the chest."

(ECF 53, Second Amended Complaint,  ¶ 52)

Decedent McCain's resulting injuries and death are described in the pleading. Plaintiffs

indicate that "Baltimore County Fire Department Engine No. 311 and Medic No. 18 arrived at the scene of the shooting at approximately 1:42 a.m. at which point paramedics observed Decedent McCain, who was "conscious and alert", "laying on his left side and his hands were handcuffed behind his back." (ECF 53, Second Amended Complaint, ¶¶ 56-57). Plaintiffs further aver that the "arriving paramedics observed a number of actively bleeding wounds about Decedent McCain's body including 1 wound to the right chest, 1 wound on the left chest, 1 wound on the posterior portion of left upper arm, 1 wound on the right posterior flank, 1 wound near the right to mid-line area of the right buttock and 1 on the upper right thigh." (Second Amended Complaint, ¶ 58) Finally, Plaintiffs aver that Decedent McCain was transported from the scene of the occurrence to Sinai Hospital where he ultimately succumbed to death. (ECF 53, Second Amended Complaint, ¶¶ 59 -63)

Read as a whole, the Second Amended Complaint includes factual statements (or basis to reach required inferences) that the Defendant officers (1) improperly directed lethal force at Decedent McCain while he was unarmed, non-combative and unable to cause harm to any person(s) present in his apartment; (2) escalated force without warning, provocation, and/or communication with Decedent McCain; and (3) collectively fired at least eighteen rounds at Decedent McCain, during two district shootings, causing him to suffer six wounds of which one, or more, was fatal. Plaintiffs have accordingly averred ample facts underpinning their Section 1983 claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (A claim has 'facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

Moreover, Plaintiffs correctly invoke the Fourth Amendment's prohibition against unreasonable seizures which protects citizens from the application of excessive force irrespective

of probable cause for an arrest. *See Tennessee v. Garner*, 471 U.S. 1, 7-8, 105 S.Ct. 1694, 85 L.Ed. 2d 1 (1985) (Court rejected suggestion that the Fourth Amendment's reasonableness requirement is satisfied so long as the seizure itself is supported by probable cause, holding that the reasonableness of a seizure depends not only on when it was made but also on how it was carried out); *See also Graham v. Connor*, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989) (Claims that law enforcement officers used excessive force when making an arrest "should be analyzed under the Fourth Amendment."); *Jenkins v. Averett*, 424 F.2d 1228, 1232 (4th Cir. 1970) (Fourth Amendment provides constitutional protection against use of excessive force during arrest that is vindicable through § 1983). "Reasonableness" in the context of Plaintiffs' excessive force claim will ultimately a decision to be decided on the "facts and circumstances of [this] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *See also Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016) ((quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)) (The "inquiry into the reasonableness of the force also requires [a Court] to 'consider the facts at the moment that the challenged force was employed' 'with an eye toward the proportionality of the force in light of all the circumstances.'" ) For the time being, Plaintiffs' have adequately asserted within their pleading that the defendant officers' use of lethal force was unreasonable and therefore violative of Decedent McCain's constitutional rights in a manner that is consistent with controlling precedent.[1]

---

[1] *See e.g. Yates v. Terry*, 817 F.3d 877 (4th Cir. 2016) ("The objective facts, when viewed in the light most favorable to Yates as we must do at this point in the proceedings, show that he was neither a dangerous felon a flight risk nor an immediate threat to Terry or anyone else," therefore the use of a taser constituted excessive force); *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) (law was sufficiently clear to inform reasonable officer "that it was unlawful to

In light of Plaintiffs' assertions that Decedent McCain was unarmed and posed no immediate threat of harm to the defendant officers when the shooting was commenced, it is appropriate for this Honorable Court to infer that the described use of force was excessive. *See e.g. Myers v. Baltimore City*, 713 F.3d 723, 735 (4th Cir. 2013)(In the context of a qualified immunity examination, the Court held a defendant officer was not shielded where he "us[ed] unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen….") Moreover, the description of the second shooting, in and of itself, supports Plaintiffs' excessive force claims. *See e.g. Estate of Jones v. City of Martinsburg,* 931 F.3d 661, 668 (4th Cir. 2020) ("Because it was clearly established that officers may not shoot a secured or incapacitated person, the officers are not entitled to qualified immunity."); *Myers,* 713, 735 (Court identified "excessive and unreasonable force" used when suspect had been brought to the ground and was no longer armed.) Because Plaintiffs' Second Amended Complaint includes a factual basis from which this Honorable Court may reasonably infer that the defendant officers are liable for the alleged Fourth Amendment violation, Plaintiffs' Section 1983 claim set forth in Count I of the Second Amended Complaint should not be dismissed. See *Iqbal*, 556 U.S. at 681; See also *Bing*

---

catering nonviolent, suspected misdemeanant who was not fleeing resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's command was to disobey two orders to end her phone call to 911 operator"); *Giles v. Kearney*, 571 F.3d 318, 327 (3rd Cir. 2009) ("No reasonable officer could agree that striking and kicking a subdued, non-resisting inmate in the side, with force enough to cause a broken rib and collapsed lung, was reasonable or necessary under established law."); *Valladares v. Cordero*, 552 F.3d 384, 390 (4th Cir. 2009) (clearly unlawful to break jaw of suspect after he surrendered); *Morelli v. Webster*, 552 F.3d 12 (1st Cir. 2009) (clearly unlawful to use force that resulted in torn rotator cuff a woman who was unarmed, nonviolent, and suspected of theft of $20.00); *Reese v. Herbert*, 520 7F. 3B 1253, 1274 (11th Cir. 2008) (no particularized, pre-existing case law needed to inform officer that he is not entitled to qualified immunity for severe beating of a restrained, nonresisting suspect); *Hadley v. Guiterrez*, 526 F.3d 1324, 1333 (11th Cir. 2008) ("We hold that a handcuffed, nonresisting defendant's right to be free from excessive force was clearly established in February 2002.").

*v. General Motors Acceptance Corp.*, 237 F. Supp. 911, 912 (E.S.S.C. 1965) (quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957)) ("A complaint should not be dismissed…unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

The same analysis is dispositive of Defendants' request that Count II of the Second Amended Complaint also be dismissed. The Maryland Declaration of Rights is the rule of law which secures the liberty interests of citizens residing in the State of Maryland and state constitutional tort claims generally mirror Section 1983 actions.[2] *See Beeman v. Department of Health and Mental Hygiene*, 107 Md. App. 122 (1995) ("state constitutional rights are... considered in *pari materia* with their federal counterparts."); See also *Dua v. Comcast* Cable, 370 Md. 604, 621 (2002)(… decisions applying one provision are persuasive authority in cases involving the other…")  The Maryland Court of Special Appeals has explained that "[e]xcessive force in making an arrest is a violation of [Maryland Constitution, Declaration of Rights] Article 24, for which a civil claim for damages may lie." *Tavakoli-nouri v. State*, 139 Md. App 716, 730 (2001). Simultaneously, a claim of excessive force under Article 26 of the Maryland Declaration of Rights is "assessed under Fourth Amendment jurisprudence, rather than notions of substantive due process, precisely like the analysis employed for claims brought under 42 U.S.C. § 1983." *Randall v. Peaco*, 175 Md. App. 320, 330 (2007).

The Defendant officers do not enjoy immunity in connection with these State law claims. In *Clea v. Baltimore*, 312 Md. 662, 680-685 (1988), the Maryland Court of Appeals explained that

---

[2] In state constitutional claims, Maryland State Courts do not follow the federally recognized distinction between official and individual capacity suits. *See Ritchie v. Donnelly*, 342 Md. 344, 370 (1991).

qualified immunity is inapplicable to the state constitutional tort claims advanced by the Plaintiffs.

The appellate court explained:

> "There are sound reasons to distinguish actions to remedy constitutional violations from ordinary tort suits. The purpose of an ordinary tort suit is not specifically to protect individuals against government officials or to restrain government officials....
>
> On the other hand, constitutional provisions like Article 24 or 26 of the Maryland Declaration of Rights... are specifically designed to protect citizens against certain types of unlawful acts by government officials. To accord immunity to the responsible government officials, and leave an individual remediless when his constitutional rights are violated, would be inconsistent with the constitutional provisions. It would also... largely render nugatory the cause of action for violation of constitutional rights...."

312 Md., at 684-8, see also *Okwa v. Harper*, 360 Md. 161, 201 (2000)("A state public official alleged to have violated Article 24, or any article of the Maryland Declaration of Rights, is not entitled to" public official immunity); *DiPino v. Davis*, 354 Md. 18, 49 (1998)( [There is no public official] immunity in an action based on rights protected by the State Constitution"); *Ritchie v. Donnelly*, 324 Md. 344, 370 (1991) (reviewing the public official immunity doctrine and holding "that a public official who violates the plaintiff's rights under the Maryland Constitution is personally liable for compensatory damages").

Plaintiffs' factually supported allegations of excessive force give rise to a claim for damages under the Maryland Declaration of Rights. Count II of the Second Amended Complaint is accordingly viable as written. Accordingly, it is respectfully requested that this Honorable Court deny the motion to dismiss this count.

### B. The Estate of Spencer McCain has proper standing to bring the constitutional tort claims advance Counts I & II of Plaintiffs' Second Amended Complaint.

Plaintiffs' federal and state constitutional tort claims have been correctly asserted on behalf of the Estate of Spencer McCain. When police misconduct results in the death of an individual a cause of action in established under 42 U.S.C.A. §§ 1983 and 1988. Because Section 1983 does not specifically outline who has standing to file an action for the death of another, the issue is controlled by Section 1988 which indicates that the governing legal rules are those provided by state law. As noted by Defendants, in the State of Maryland the Personal Representative of an Estate "may prosecute, defend or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted." Maryland Annotated Code, Estates and Trusts Article § 7-401(y)(1); See also *Beynon v. Montgomery Cablevision*, 350 Md. 460, 508 (1998) ("[t] he purpose of survival statutes is to permit a decedent's estate to bring an action that the decedent could have institute had he or she lived.") The Estate of Spencer McCain has proper standing to bring both the Section 1983 claim and the claim under the Maryland Declaration of Rights that are included in the Second Amended Complaint.

### C. The Monell claim set forth in Count III of the Second Amended Complaint is sufficiently plead and facially plausible.

*Monell* liability arises when "constitutionally offensive acts of [municipal] employees are taken in furtherance of some municipal 'policy or custom." *Milligan v. City of Newport* News, 743 F.2d 227, 229 (4th Cir. 1984) In such circumstances, "local governments… may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell v. Department of Social Services of the City of New* York, 436 U.S. 658, 690-91, 98 S.Ct. 2018 (1978).

The United States Supreme Court has indicated that *Monell* claims are not subject to a "heightened pleading standard." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160 (!993) Plaintiffs need only set forth "a short plain statement of the claim showing that [they are] entitled to relief." Federal Rule 8(a). The Fourth Circuit Court of Appeals thus explained that

> [a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier. To survive on a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts which, if true, state a claim to relief that is plausible on its face… The recitation of facts need not be particularly detailed, and the chance of success need to not be particularly high. A plaintiff fails to state a claim only when he offers labels and conclusions or formulaically recites the elements of his §1983 cause of action.

*Owens v. Baltimore City State's Attorney*, 767 F.3d 379, 403 (2014)(internal citations omitted)

In *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir. 1987), the Fourth Circuit Court of Appeals provided a basic definition of what constitutes "policy" in the context of *Monell* claim and explained:

> 'Policy' in this context implies most obviously and narrowly a 'course of action consciously chosen from among various alternatives' respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government.

*Spell,* 824 F.2d at 1386. Noting that official policy can also consist of custom or usage, the Fourth Circuit Court of Appeals further provided a working definition as to when policy can be implied from the failure of municipal officials to correct unconstitutional conditions:

> 'Custom and usage' in the sense of 'persistent and widespread ... practices' by municipal agents and employees may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees .... Constructive knowledge may be evidenced by the fact that the practices have been so widespread

> or flagrant that in the proper exercise of its official responsibilities,
> the governing body should have known of them.

*Id.*

Plaintiffs claim the existence of such a policy or custom within the controlling pleading, and expressly assert that "[t]he conduct that led to Decedent Spencer McCain's untimely passing was the result of [such] a dangerous pattern of practice within the Baltimore County Police Department of using excessively deadly force when confronted with individuals with mental health disabilities and those experiencing mental health crises." (ECF 53, Second Amended Complaint, ¶¶ 72, 86-88, 115-16)  Plaintiffs aver that this "historical and dangerous practice within the Baltimore County Police Department of quickly directing lethal force at emotionally disturbed individuals and/or utilizing excessive deadly force against individuals with mental health disabilities and those experiencing mental health crises" has continued "unabated" in the Baltimore County Police Department since "at least 2006." (Second Amended Complaint, ¶ 87) As conceded in Defendants' Motion to Dismiss, this claim of such a policy of custom is a proper basis for liability under *Monell*. (Defendants' Motion to Dismiss, pp.12-13 (citing *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)(quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999))( "A plaintiff may establish the existence of a policy or custom: … 3 through an omission, such as a failure to properly train officers that 'manifest[s] deliberate indifference to the rights of citizens; or 4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law."), p. 18 (quoting *Owens*, 767 F.3d 379 at 402 ("A municipality may be liable under the condonation theory if policymakers fail 'to put a stop to or correct a widespread patten of unconstitutional conduct.'"))

Plaintiffs maintain that the "occurrence of the specific violation [alleged in the Second Amended Complaint] was made reasonably probable by permitted continuation of the custom." *Spell v. McDaniel,* 824 F.2d at 1391. Plaintiffs support their assertion with factual descriptions of specific occasions showing a persistent and widespread practice by Baltimore County police

officers of utilizing deadly force during encounters with "people suffering from emotional crises, both predating and postdating the subject occurrence in his case", including the May 14, 2019 police involved shooting of Odatei Mills; the August 1, 2016 shooting of Korryn Gaines; the February 19, 2019 shooting of Emanuel Oates; the June 22, 2019 shooting of Scott Robertson; and the November 26, 2019 shooting o Eric Sopp. (Second Amended Complaint, ¶ 85) Plaintiffs have accordingly met their pleading burden by setting for specific facts from which it may be reasonably inferred that Decedent McCain was shot pursuant to a "de facto custom and policy within the Baltimore County Police Department of unreasonably directing excessive force against emotionally disturbed persons." (ECF 53, Second Amended Complaint, ¶¶ 86, 115-16); *See Spell*, 824 F.2d 1386 ("the existence of such a custom or usage may be found in persistent and widespread practice of municipal officials which, although not authorized by written law, are so permanent and well-settled as to have the force of law."); *see also Baron v. Suffolk County Sheriff's Dept.,* 402 F.3d 225, 242 (1st Cir. 2005)("Although [the sheriff] may not have had actual knowledge of the custom, however, municipal liability can also be based on a policymaker's constructive knowledge -- that is, if the custom is so widespread that municipal policymakers should have known of it.); *McNabola v. Chicago Transit Authority*, 10 F.3d 510, 511 (7th Cir. 1993)(" A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice."); *Surlocco v. New York City Police Department*, 971 F.2d 864, 871 (2d Cir. 1992)("[A] § 1983 plaintiff may establish a municipality's liability by demonstrating that the actions of subordinate officers are sufficiently widespread to constitute the constructive acquiescence of senior policymakers."); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir. 1991)("[A] long-standing and widespread practices deemed authorized by the policymaking officials because they must have known about it but failed to stop it.")

Moreover, contrary to Defendants' argument, the existence of Baltimore County's policy or

custom may be properly inferred in this case not only from events that predated the fatal shooting of Decedent McCain, but also from acquiescence to the non-constitutional practice alleged in Plaintiffs' Second Amended Complaint, as well as, events that transpire after the time of a subject happening (as described in paragraph 85). This is proposition in illustrated by cases decided outside of the Fourth Circuit. For example, in *Grandstaff v. City of Borger, Texas,* 767 F.2d 161 (5th Cir. 1985), the Fifth Circuit Court of Appeals found an informal policy based upon a police department's failure to investigate or to discipline any of the officers involved in the incident that gave rise to the underlying litigation and explained:

> The disposition of the policymaker may be inferred from his conduct after the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admission of error. The officers testified at trial that no changes had been made in their policies. If that episode of such dangerous recklessness, obtained so little attention and action by the city policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the city of Borger. If prior policy had been violated, we would expect to see a different reaction. If what the officers did and failed to do on [the date of the underlying happening] was not acceptable to the police chief, changes would have been made.
>
> The reaction to so gross and abusive the use of deadly weapons says more about the existing disposition of the City's policymaker than would a dozen incidents where individual officers employed excessive force.

*Grandstaff,* 767 F.2d at 171; *See also Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir. 1989)(evidence of misconduct by officers during an event which gave rise to suit could be utilized as evidence of the existence of municipal policy or custom.) In *Foley v. City of Lowell,* 948 F.2d 10 (1st Cir. 1997), the First Circuit Court of Appeals also explained that evidence of a later incident was probative of the city's policy of ignoring abusive actions by its officers. The admission of post-event evidence of a policy or custom was likewise sanctioned by the Ninth Circuit Court of Appeals in *Henry v. County of Shasta,* 132 F.3d 512 (9th Cir. 1997), wherein the appellate court

explained:

> Here, factual issues were presented that the county acted in accordance with an established policy or deliberate indifference to violation of rights by stripping and detaining in rubber rooms persons stopped for minor, non-jailable traffic offenses who refuse to sign a notice to appear, or demand to be taken before magistrate. There was evidence that the county permitted an almost identical incident as that complained of by Henry to occur after the county was sued and after being put on notice unequivocally of its deputies' and nurses' unconstitutional treatment of Henry.... In holding that the [postdated] declarations may be used to establish municipal liability although the events related therein occurred after the series of incidents that serves as the basis for Henry's claims, we reiterate our rule that post-event evidence is not only admissible for purposes of providing the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry.... When a county continues to turn a blind eye to severe violations of an inmates' constitutional rights - despite having received notice of such violations - a rational factfinder may properly infer the existence of a previous policy or custom of deliberate indifference...."

*Henry,* 132 F.3d at 518-20; *See also Beck v. City of Pittsburgh,* 89 F.3d 966, 97 3(3d Cir. 1996)(post-event incidents "may have evidentiary value for a jury's consideration whether the city and policymakers had a pattern of tacitly approving the use of excessive force.")  In the instant case, the aggregate of the referenced shooting occurrences illuminate the continuing custom.

*Monell* claims may also be correctly asserted based upon allegations of improper training, supervision and discipline of officers. In *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989), The Supreme Court has held that inadequacy of training may serve as a basis for § 1983 liability, in circumstances where the failure to train amounts to "deliberate indifference" to the constitutional rights of persons with whom the police may come in contact. The court explained that liability rests when

> in light of the duties assigned to specific officers or employees the need for more different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.*, 489 U.S. 378, 390.  This deliberate indifference standard likewise applies to claims of inadequate supervision and discipline when they are evaluated outside of the context of policy or custom.

Within the Second Amended Complaint, Plaintiffs also contend that the spate of shootings referenced in their complaint (including the shooting of Decedent McCain) continued because the Baltimore County Police Department "failed to properly supervise or discipline its officers when they utilize[s] excessive force against people in mental or emotional distress." (Second Amended Complaint, ¶¶ 87- 88, 100-16) In support of this contention, Plaintiffs aver that "none of the Defendant officers in this case, nor the Baltimore County police officers involved in the encounters described in Paragraph 85 of the Second Amended Complaint were disciplined in connection with the described happenings." (Second Amended Complaint, ¶ 89)  Plaintiffs also aver that in each of the instances described in Paragraph 85 of the Second Amended Complaint " the Baltimore County Police Department conducted perfunctory investigations intended to quickly clear the shooting officers of any wrongdoing and then returned the officers to duty without further action." (Id.)

Plaintiffs further maintain that the fatal shooting of Decedent McCain can be reasonably attributed to Baltimore County's failure to train its officers and personnel. Plaintiffs aver that the Baltimore County Police Department "knew and understood the necessity of training in order for its officers to safely and successfully respond to encounters with people in crises" (ECF 53, Second Amended Complaint ¶¶ 79, 111-114), and accordingly trained select "officers on how to identify signs of mental illness and substance abuse disorders and assist individual who are experiencing mental health issues or emotional crises." (ECF 53, Second Amended Complaint ¶ 78) However, "Defendant Officers Wilkes, Besaw, [and] Stargel [did not receive] any training on the handling of emotionally disturbed person and/or the manner of response to calls for service involving emotionally disturbed persons." (ECF 53, Second Amended Complaint ¶81) In addition to

the allegations regarding the failure to train the three Defendant officers, Plaintiffs aver that

> [t]he Baltimore County Police Department and  Baltimore County further lack[ed] any policy or training requiring dispatchers at the 911 Communications Center to direct service calls involving subjects experiencing mental health crises to officers trained in crises assistance, or to otherwise notify and/or request the assistance of the Mobile Crises Team or Critical Incident Support Team. Operator at the 911 Communication Center are generally the first to receive information from callers regarding the nature, threat, and severity of any emergency, and therefore are a critical link in the chain of emergency responses. The Baltimore County Police Department and Baltimore County's failure to implement such a policy or training contributes to the unjustified, unreasonable and excessive force against people experiencing mental health or emotional crises.

(ECF 53, Second Amended Complaint ¶83)  Because of the dearth of training, Defendant Officers Wilkes, Besaw, and Stargel did not attempt "any effort toward a non-violent resolution and/or [to] de-escalate the encounter" with Decedent McCain and "unholstered their weapons before making entry into the McCain Residence, immediately trained their weapons on Decedent McCain and commenced shooting before attempting any communication with Decedent McCain." (ECF 53, Second Amended Complaint ¶73)

Plaintiffs' *Monell* claim is adequately supported by averments that Baltimore County Police Department (1) had historically acquiesced to its officers' use of lethal force directed at emotionally disturbed persons; (2) acquiesced to the use of lethal force directed at Decedent McCain; and (3) subsequently acquiesced to similar conduct directed at other emotionally disturbed individuals. Plaintiffs maintain that these happenings adequately demonstrate a policy or custom, failure to discipline and failure to train necessary for the maintenance of their *Monell* claim.  Defendants' motion to dismiss Count III of the Second Amended Complaint should accordingly be denied.

### D.  **Plaintiffs' state law claims in Counts IV and V are also facially viable**.

Counts IV and V of the Second Amended Complaint are negligence actions against the

named defendant officers and Baltimore County under Maryland state law. "In Maryland, two separate actions arise from a death caused by the negligence of another: a survival action and a wrongful death action." *Jones v. Flood*, 118 Md. App. 217, 223 (1997); see also *Steward v. Untied Elec. Light & Power Co.*, 104 Md. 332, 338-39 (1906). MD Code, Estates and Trusts § 7-401(y) provides that the personal representative may bring suit to recover damages. *See also Jones*, 118 Md. App. at 223. The Court of Appeals of Maryland has held that "a survival action [is] one for 'personal injury.'" *Goss v. Estate of Jennings*, 207 Md. App. 151, 172 (2012); quoting *U.S. v. Streidel*, 329 Md. 533, 544, n. 9 (1993), *superseded by statute on other grounds*. "In a survival action, the personal representative may bring suit to recover for pain and suffering sustained by the decedent between the time of injury and death." *Jones*, 118 Md. App. at 223. Contrary to Defendants' argument, Plaintiffs' survival action is a proper stand-alone claim upon which relief may be granted.

Moreover, Defendants are not entitled to "public official immunity" at the present stage of this litigation. "[P]ublic official immunity is qualified, not absolute." *Baltimore Police Dept. v. Cherkes*, 140 Md.App. 282 (2001) (quoting *Nelson v. Kenny*, 121 Md. App. 482, 487 (1998). The immunity is defeated in circumstances where actors are found to have performed the relevant acts with "malice," *Thomas v. City of Annapolis*, 113 Md. App. 440, 452 (1997), acted with "gross negligence," *Cooper v. Rodriguez*, 443 Md. 680, 723 (2015), committed an intentional tort, *Houghton v. Forrest*, 412 Md. 578, 586, 588 (2010), or committed a state constitutional tort, *Ritchie v. Donnelly*, 324 Md. 344, 370 (1991). "Actual malice is established by proof that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.' " *Bord v. Baltimore County*, 220 Md. App. 529,

557 (2014) (quoting *Town of Port Deposit v. Petetit*, 113 Md. App. 401, 416  (1997)); *see also*

*Hines v. French*, 157 Md. App. 536, 562-63 (2004) (characterizing this definition as the standard

for "malice" for the purposes of public official immunity). Gross negligence, on the other hand,

is

> an intentional failure to perform a manifest duty in reckless
> disregard of the consequences as affecting the life or property of
> another, and also implies a thoughtless disregard of the
> consequences without the exertion of any effort to avoid them.
> Stated conversely, a wrongdoer is guilty of gross negligence or acts
> wantonly and willfully only when he [or she] inflicts injury
> intentionally or is so utterly indifferent to the rights of others that he
> [or she] acts as if such rights did not exist.

*Cooper,* 443 Md. at 708 *(quoting Barbre v. Pope,* 402 Md. 157, 187(2007))*.* Whether one acted

with malice or gross negligence is typically a fact-dependent determination. *See Id.* at 708-09, 118;

*Artis v. Cyphers*, 100 Md. App. 633, 653-54 (1994).

The factual allegations set forth in Plaintiffs Second Amended Complaint permit a

reasonable inference that the defendant officers acted with gross negligence, or alternatively, with

deliberate indifference towards a pervasive and unreasonable risk of constitutional harm to citizens

like Decedent McCain. Accordingly, public official immunity does not entitle them to  the

requested dismissal of Counts IV and V of the Second Amended Complaint.

Likewise, Baltimore County is not shielded from these common law counts at this stage

of the litigation.  The Maryland Court of Special Appeals of Maryland examined the

applicability of immunity for municipalities and other local governments with regard to

*respondeat superior* and explained:

> Maryland law provides no immunity for municipalities and
> other local government entitled from suits based upon violations of
> state constitutional rights. In *Clea v. City of Baltimore, supra,* 312
> Md. at 667, 541 A.2d at 1305, this Court set forth the general rule

that a municipality is ordinarily immune from tort suits with respect to its "governmental" activities but not with respect to "proprietary" activities." Nevertheless, we went on to state as follows (312 Md. at 667 n. 3, 541 A.2d at 1305 n. 3):

> The governmental-proprietary distinction has not been applied, however, when local governments have been sued for violations of constitutional rights. In that situation, there is ordinarily no local governmental immunity. *See, e.g., Hebron Sav. Bk. v. City of Salisbury,* 259 Md. 294, 269 A.2d 597 (1970); *Jarvis v. Mayor and City Council of Baltimore City,* 248 Md. 528, 534–535, 237 A.2d 446 (1968); *Burns v. Midland,* 247 Md. 548, 234 A.2d 162 (1967).

> …There would be no reason for the Court of Appeals to have made that statement other than to explain the reason for denying immunity to a municipality for a constitutional tort: such a tort will not be deemed to have been committed in the performance of the municipality's governmental functions. As noted above, when a county or municipality acts in its governmental capacity, as distinguished from a proprietary capacity, it is exercising a portion of the State's police power, delegated to it by the State. Because the commission of a constitutional tort cannot be a proper exercise of the delegated police power of the State, there is no basis for the application of the distinction between proprietary activities and governmental activities in order to confer governmental immunity on the municipality for such a tort. And when a municipality is liable for its torts, as it is when it acts in a proprietary capacity, it is responsible under the *respondeat superior* doctrine for the torts committed by its employees in the scope of their employment…

> <u>We hold, therefore, that a municipality is not entitled to governmental immunity for a constitutional tort committed by one of its agencies or employees and imputed to the municipality under the doctrine of *respondeat superior*</u>.

*Town of Port Deposit v. Petetit*, 113 Md. App. at 420-423 (emphasis supplied).

In this case, Plaintiffs have alleged a viable cause of action for violation of Decedent McCain's constitutional rights under the Maryland Declaration of Rights under Articles 24 and 26. (ECF 53, Second Amended Complaint, Count II, ECF 53, ¶¶ 104-107) Plaintiffs brought

under Counts IV and V specifically state that "Defendant Baltimore Count[y] is vicariously liable for the acts and omissions of its actual and apparent agents, servants, and/or employees including Defendants Wilkes, Besaw, and Stargel." (ECF 53, Second Amended Complaint, ¶¶ 123 and 130) As such, granting Defendants Motion to Dismiss Counts IV and V with respect to Baltimore County, Maryland on the basis of immunity is improper at this stage of litigation.

E. **Punitive Damages are available in connection with Plaintiffs' Section 1983 claims.**

In *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625 (1983), the United States Supreme Court unequivocally indicated that punitive damages are available in Section 1983claims. *Id.* 461 U.S. 36-37. In evaluating the issue, the Court noted that the generally "'[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive <u>or reckless indifference to the rights of others.</u>'" 461 U.S. at 46-47(quoting The Restatement (Second) of Torts (1979)(emphasis supplied)). Judge Brennan, writing on behalf of the Supreme Court, concluded that "… based on the policies of 1983, we are content to adopt the policy judgment of the common law – that reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." 461 U.S. at 51 (internal citations omitted)

Plaintiffs' Second Amended Complaint includes a sufficient showing of malice to support their demand for punitive damages. Even assuming*, arguendo*, that Plaintiffs' complaint does not include facts from which an improper motive of intent might be inferred, the pleading demonstrates that the Defendants acted with "reckless or callous indifference to [Decedent McCain's] federally protected rights." *Smith v. Wade*, 461 US. at 56 (1983). As noted above, the Second Amended Complaint includes statements indicating that Decedent McCain was shot to death, in front of his minor daughter, by the responding Defendants who acted without

provocation. Plaintiffs aver that an initial volley of eighteen shots were "immediately" fired at Decedent McCain when he was standing in his dining room, was not acting in an overtly threatening or combative manner, and was unarmed. Plaintiffs further aver that a second shooting occurred after Decedent McCain had been incapacitated and while he was lying injured on his dining room floor.

When viewed in the light most favorable to the Plaintiffs, the above referenced factual averments are sufficient to draw an inference that the Defendants' actions were motivated by evil motive or intent or were undertaken with reckless or callous indifference to the federally protected rights. Accordingly, punitive damages are available in connection with Plaintiffs' 1983 claims.

## III.    <u>Conclusion</u>

For the above stated reasons, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and grant such further and additional relief as it deems to be just and appropriate.

Respectfully submitted,

Iamele & Iamele, LLP

_____/s/_____
Anton L. Iamele, Fed Bar No. 14845
201 North Charles Street, Suite 400
Baltimore, Maryland 21201
aiamele@iamelelaw.com
Telephone: 410-779-6160
Facsimile: 410-779-6161
*Counsel for Plaintiffs*

## **HEARING REQUEST**

Plaintiff request that a hearing be held concerning Defendant's Motion to Dismiss and Plaintiffs Opposition to the same.

_____/s/_____
Anton L. Iamele

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this **8th** day of **February, 2021**, a copy of the foregoing

Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint was sent

by this Court's electronic delivery system to the following:

    Alexa Ackerman, Assistant County Attorney
    Andrea D. Smith, Assistant County Attorney
    Baltimore County Office of Law
    400 Washington Avenue, Suite 219
    Towson, MD 21204

                                                     /s/
                                    Anton L. Iamele