**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SHANNON SULTON,** *et al.*, | * |
| | * |
|     **Plaintiffs,** | * |
| | * |
| **v.** | *      **Civil Case No. SAG-18-2864** |
| | * |
| **BALTIMORE COUNTY, MARYLAND,** *et al.*, | * |
| | * |
|     **Defendants.** | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This case arises out of an incident on June 25, 2015, in which officers from the Baltimore County Police Department ("BCPD") responded to the home of Spencer McCain in Owings Mills, Maryland for an emergency call citing a disturbance. During the encounter, the officers discharged their weapons, causing the death of Mr. McCain. Mr. McCain's estate, Shannon Sulton, as mother and next friend of Mr. McCain's three minor children, and Sheila Smith, Mr. McCain's mother, (collectively, "Plaintiffs"), have filed this action against Baltimore County and three officers involved in the incident, Officer Shenell Wilkes, Officer Jonathan Besaw, and Officer Shannon Stargel (collectively, "Defendants"). Currently pending is Defendants' Motion to Dismiss the Second Amended Complaint ("the Motion"), ECF 54. Plaintiffs filed an opposition, ECF 55, and Defendants filed a reply, ECF 56. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be granted in part and denied in part.

## I.     FACTUAL BACKGROUND

The following facts from the Second Amended Complaint ("SAC") are accepted as true, and all reasonable inferences are drawn in Plaintiffs' favor. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

### A.     Incident at McCain Residence

On June 25, 2015, Baltimore County 911 received multiple emergency calls for a disturbance at the McCain residence in Owings Mills, Maryland. ECF 53 ¶ 15. When officers responded to the residence after the first call at approximately 12:25 a.m., they heard no noise emanating from the residence and were unable to contact any of the occupants. *Id.* ¶ 19. However, about 30 minutes later, officers were dispatched to the home again following a second emergency call. *Id.* ¶ 20. The dispatcher advised that Mr. McCain "was a paranoid schizophrenic who has been hospitalized multiple times." *Id.* The dispatcher did not alert or send the Baltimore County Crisis Response Unit or other officers with crisis intervention training. *Id.* ¶ 21.

Instead, Officers Besaw, Stargel, and Wilkes responded to the second emergency call and congregated by the door to the home. *Id.* ¶ 22. They heard no sounds coming from the residence. *Id.* Officer Besaw advised the other officers that he knew from prior service calls that Mr. McCain was schizophrenic. *Id.* ¶ 17. After about fifteen minutes, during which they discussed Mr. McCain's mental health and prior calls for service, they attempted entry into the home. *Id.* ¶ 23. Prior to entry, they requested additional units to be dispatched to the scene. *Id.* ¶ 26. The three officers made entry with their guns drawn. *Id.* ¶ 27. As they entered the home, they saw Mr. McCain standing in the living room area unarmed. *Id.* ¶¶ 29, 31. His minor daughter was also in the living room area. *Id.* ¶ 30. Mr. McCain was "sufficiently far away from the Defendant officers that he did not pose any threat to their safety and could not reasonably be perceived to pose any

threat to their safety." *Id.* ¶ 31. However, almost immediately upon entry, the officers began shooting at Mr. McCain, discharging at least eighteen rounds. *Id.* ¶ 35. Mr. McCain fell to the ground. *Id.* ¶ 38. Officer Besaw notified dispatch that shots had been fired, just 26 seconds after advising dispatch that they were entering the apartment. *Id.* ¶ 41.

Officer Wilkes was directed to cover Mr. McCain, who was alive but visibly injured and lying on the ground. *Id.* ¶ 43. After walking past Mr. McCain and determining that Shannon Sulton and her minor son were in a back bedroom, Officers Stargel and Besaw approached Mr. McCain to place him in handcuffs. *Id.* ¶ 47. They directed Mr. McCain to produce his arms to be handcuffed. *Id.* ¶ 51. However, when Mr. McCain raised his arms in response to the officers' direction, Defendant Wilkes fired her weapon and shot him once in the chest. *Id.* ¶ 52.

When paramedics arrived at the scene, Mr. McCain was lying on his left side with his hands handcuffed behind his back. *Id.* ¶ 57. Paramedics observed six actively bleeding gunshot wounds, and they transported Mr. McCain by ambulance to the hospital. *Id.* ¶¶ 58-59. His condition deteriorated en route, and he ultimately succumbed to his injuries at the hospital at approximately 6:38 a.m. *Id.* ¶¶ 60, 62.

**B.    Allegations Regarding BCPD**

The BCPD has General Order 1-3.18, "Mental Health/Emotional Crisis Related Issues," which requires its officers, upon encountering a person experiencing mental health issues, to "offer aid," including a request for a mobile crisis team to respond, and to "seek immediate medical attention." *Id.* ¶ 76. The General Order also provides that the officers should "de-escalate situations through verbal and active listening skills." *Id.* ¶ 77. Certain BCPD officers are provided crisis intervention training, *id.* ¶ 78, but upon information and belief officers Wilkes, Besaw, and Stargel have not received any training on the handling of emotionally disturbed persons. *Id.* ¶ 81.

BCPD also does not provide training to its 911 dispatchers to direct service calls for subjects experiencing mental health crises to the mobile crisis teams or critical incident support teams. *Id.* ¶ 83.

The SAC cites to a number of police involved shootings of individuals suffering from mental health issues or emotional crises, including one incident in 2009 and a series of incidents in 2016 and 2019, after Mr. McCain's death. *Id.* ¶ 85. It alleges a "de facto custom and policy within the Baltimore County Police Department of unreasonably directing excessive force against emotionally disturbed persons." *Id.* ¶¶ 85-86. Moreover, it alleges that the BCPD condones such use of excessive force by declining to take disciplinary action against the officers involved in such incidents. *Id.* ¶¶ 87-89.

### C. Plaintiffs' Claims for Relief

Plaintiffs seek recovery of compensatory damages, punitive damages, and reasonable attorneys' fees based on five claims for relief. Count I alleges that the Officer Defendants deprived Mr. McCain of his Fourth Amendment right to be free of unreasonable seizure and his Fourteenth Amendment right to due process, in violation of 42 U.S.C. § 1983. ECF 53 ¶¶ 94-103. Count II asserts the same constitutional claims under the Maryland Declaration of Rights, Articles 24 and 26. *Id.* ¶¶ 104-107. Count III alleges that Baltimore County is also liable under § 1983 for the constitutional deprivations, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Id.* ¶¶ 108-116. Count IV asserts a state law wrongful death negligence action against all Defendants. *Id.* ¶¶ 117-127. Count V is a survival action, brought only by Mr. McCain's estate, for the pain, suffering, and mental distress he experienced before death as a result of Defendants' negligence. *Id.* ¶¶ 128-32.

## II.     LEGAL STANDARDS

Defendants have filed a motion to dismiss the SAC, in its entirety, under Federal Rule of Civil Procedure 12(b)(6). ECF 54. A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the

5

elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d 435 at 440 (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III. ANALYSIS

#### A. Plaintiffs' State and Federal Constitutional Claims in Counts One and Two

If any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, he may be liable in a suit for money damages. 42 U.S.C. § 1983 (2018). Necessarily, then, Plaintiffs must first plausibly allege two prerequisites for supervisory and *Monell* liability: (1) that Defendants were acting "under color of state law"; and (2) that their conduct deprived them of the "rights, privileges, or

immunities secured by the Constitution or laws of the United States." *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 720 (4th Cir. 1991) (citation omitted).  Defendants make no argument that the officers involved were not acting under color of state law.

Count One of the SAC advances two theories of constitutional violation: violation of the Fourth Amendment, which guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and violation of the due process clause of the Fourteenth Amendment.  In Count Two, the SAC relies on the state analogs of those constitutional provisions, Articles 24 (due process clause) and 26 (Fourth Amendment) of the Maryland Declaration of Rights.

Defendants correctly note that "where a particular Amendment provides an explicit textual source of constitutional protection, against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  It is well established that unlawful arrest and excessive force claims under § 1983 are properly asserted under the Fourth Amendment, not the Fourteenth Amendment. *See Albright*, 510 U.S. at 725; *Graham*, 490 U.S. at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person.") (citations omitted).  Thus, dismissal of Plaintiffs' claims is appropriate to the extent they assert Fourteenth Amendment substantive due process claims and claims pursuant to Article 24 of the Maryland Declaration of Rights.

Defendants also argue that Plaintiffs fail to state a plausible § 1983 Fourth Amendment claim or a corresponding state constitutional claim pursuant to Article 26. ECF 54-2 at 10-13. That argument is unpersuasive. Taking Plaintiffs' allegations as true, there are ample facts suggesting that the Officer Defendants' rapid resort to shooting at an unarmed individual upon their entry into the home, and Officer Wilkes's subsequent decision to shoot an unarmed and injured individual lying wounded on the floor, constituted an unreasonable use of excessive force. The motion to dismiss, therefore, will be denied as to the § 1983 Fourth Amendment and Article 26 claims.

### B. Plaintiffs Plausibly Allege, in Count Three, a Claim of *Monell* Liability Under § 1983 as to Failure to Train and Condonation

Baltimore County contends that the SAC insufficiently alleges its liability to Plaintiffs under the theory espoused in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[1] ECF 54-2 at 14-24. There are three necessary elements for *Monell* liability. First, the plaintiff must plausibly allege that his constitutional harm stems from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell*, 436 U.S. at 694); *see also Spell*, 824 F.2d at 1389. As interpreted by the Fourth Circuit, a "policy or custom" can exist in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

---

[1] Baltimore County argues that the SAC has not stated a claim for supervisory liability. ECF 54-2 at 22-24. No supervisor is named as a defendant, and this Court does not read the SAC to assert such a claim.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Second, the plaintiff must allege facts showing that the policy's creation is fairly attributable to the municipality. *Spell*, 824 F.2d at 1389; *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of *Monell* liability."). Third, the plaintiff must allege an affirmative causal link between the "policy or custom," and the particular injury suffered by the plaintiff. *Spell*, 824 F.2d at 1389.

Reading their allegations in a light most favorable to them, Plaintiffs appear to allege the existence of an unconstitutional "custom or policy" in three ways: through establishment of a policy or custom of use of excessive force towards mentally disturbed individuals; through a failure to properly train officers; and through the condonation of a widespread pattern of unconstitutional conduct. *See* ECF 53 ¶¶ 71-93. Two of the three theories are properly alleged.

1. <u>Plaintiffs Fail to Plausibly Allege that a Baltimore County Official with Final Policymaking Authority Established an Official Policy</u>

As noted, a municipality can be held liable for constitutional harms stemming from a policy or custom instituted by the "official actions" of municipal officials with "final policymaking authority," or those officials who "have the responsibility and authority to implement *final* municipal policy with respect to a particular course of action." *Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 522-23 (4th Cir. 2000) (citations omitted). The "official policy" of a municipality "refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

The SAC's allegations are insufficient to establish any official policy instituted by a Baltimore County official with final policymaking authority.  To the contrary, the SAC acknowledges that the County maintains a General Order requiring its officers to take specific actions when confronted with persons exhibiting mental health issues, although the date on which the General Order became effective is not alleged.  ECF 53 ¶¶ 76-77.  Further, to the extent that Plaintiffs have alleged an official policy advocating the use of excessive force when interacting with emotionally disturbed persons, there are no allegations concerning (1) exactly who, within the BCPD, instituted the policy, and (2) why that individual (or group of individuals) had final policymaking authority.  Accordingly, Plaintiffs have failed to allege a "decision of a person with final policymaking authority" sufficient to sustain a viable *Monell* claim.

> 2. Plaintiffs Plausibly Allege a Custom Through the BCPD's Failure to Train Its Officers

A municipality can also be liable for an established "policy" through a failure to train, if it "reflects a 'deliberate' or 'conscious' choice" to not do so.  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).   Training  policy  deficiencies  can  include  (1)  "express  authorizations  of unconstitutional conduct," (2) "tacit authorizations" of such unconstitutional conduct, and (3) failures to adequately "prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty."  *Spell*, 824 F.2d at 1390.  No matter which theory is alleged, the plaintiff must point out "a specific deficiency" in training, "rather than general laxness or ineffectiveness in training."  *Id.*  But the municipality will only be liable if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been *deliberately indifferent* to the need."  *Harris*, 489 U.S. at 390 (emphasis added); *accord Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994).

10

Here, Plaintiffs specifically allege the type of training that should have been required and was afforded to some, but not all, BCPD officers. They allege that the department provides crisis intervention training to select officers, which "instructs officers on how to identify signs of mental illness and substance abuse disorders and assist individual [sic] who are experiencing mental health issues or emotional crises." ECF 53 ¶ 78. They further allege that while the existence of that training evidences Baltimore County's knowledge that such training is needed "to safely and successfully respond to encounters with people in crises," "the Baltimore County Police department has decided against training the majority of its officers on these policies." *Id.* ¶¶ 79, 80. Those allegations suffice to meet the requirement that a plaintiff allege specific deficiencies in the BCPD's training in order to state a claim. *McDowell*, 2018 WL 3756727, at *4; *see also, e.g.*, *Peters v. City of Mount Rainier*, No. GJH-14-955, 2014 WL 4855032, at *5 (D. Md. Sept. 29, 2014); *Hall v. Fabrizio*, No. JKB-12-754, 2012 2905293, at *2 (D. Md. July 13, 2012).

Moreover, Plaintiffs have plausibly alleged a causal link between the training deficiency and the harm they suffered. They have alleged that the responding officers knew, prior to entering the home, that Mr. McCain suffered from mental health issues and emotional disturbances, and that the officers had a relatively significant period prior to entry during which they conferred about their plans. Thus, Plaintiffs have plausibly linked the alleged failure to train these specific officers in the appropriate methods for addressing a crisis involving a mentally ill person with the harm that ensued. *See, e.g.*, *Estate of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 673571, at *39 (D. Md. Feb. 10, 2020) (finding that specific allegations regarding the BPD's failure to train officers on disclosing evidence pursuant to *Brady* plausibly alleged the BPD's *Monell* liability to the plaintiff for the alleged actions of evidence suppression leading to his conviction for felony murder).

11

### 3. Plaintiffs Have Plausibly Alleged that Baltimore County Condoned the Use of Excessive Force

A municipality is liable under a condonation theory "if municipal policymakers fail 'to put a stop to[,] or correct[,] a widespread pattern of unconstitutional conduct.'" *Owens*, 767 F.3d at 402 (quoting *Spell*, 824 F.2d at 1389). To plausibly allege *Monell* liability by condonation, a plaintiff must state facts showing "a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Id.* at 402-03 (internal alterations and quotations omitted) (quoting *Spell*, 824 F.2d at 1386-91). While "[p]revailing under such a theory is no easy task . . . alleging such a claim is, by definition, easier." *Id.* at 403.

Here, it is true that the SAC alleges only one specific prior incident involving the BCPD's use of force against a mentally ill individual. That incident occurred roughly five years before the incident involving Mr. McCain, with no apparent overlap in the officers involved. One prior, somewhat dated, incident cannot constitute a "persistent and widespread practice of municipal officials" and does not suggest that corrective conduct would have prevented the instant harm. However, the SAC also includes more general allegations that the specified incidents are only "some of the examples of deadly force" and that "there have been other occasions in which members of the Baltimore County [P]olice Department have unreasonably directed deadly force at emotionally disturbed persons." ECF 53 ¶ 85. Those type of allegations have, in similar contexts, been deemed sufficient to survive the low bar of a motion to dismiss. *See McDowell*, 208 WL 3756727, at *5 (citing *Jones v. Jordan*, No. GLR-16-2662, 2017 WL 4122795, at *9 (D. Md. Sept. 18, 2017); *Johnson v. Holmes*, 204 F. Supp. 3d 880, 892 (W.D. Va. 2016); *Jones v. Chapman*, Civ. No. ELH-14-2627, 2015 WL 4509871, at *5, *17 (D. Md. July 24, 2015).

12

Plaintiffs have also plausibly alleged that the condoned policy or custom has an affirmative causal link to their particular constitutional violation. *E.g.*, *Spell*, 824 F.2d at 1391. This causal link is satisfied "if occurrence of the specific violation [alleged] was made reasonably probable by permitted continuation of the custom," such that the specific violation was "almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Id.* (internal quotations omitted); *see also, e.g.*, *Carter*, 164 F.3d at 218 (quoting *Spell*, 824 F.2d at 1390). Taking Plaintiffs' allegations regarding a persistent and widespread practice as true, causation has been plausibly alleged. This Court notes, however, that it agrees with Baltimore County that consideration of specific incidents post-dating Mr. McCain's death would be improper when assessing causation. To the extent it eventually proves necessary for Plaintiffs to rely on subsequent incidents to establish a "custom," they will have an uphill battle in establishing that the occurrence of this particular situation with Mr. McCain was made probable by the continuation of a custom that had not yet arisen.

As the Fourth Circuit has recognized, however, at the pleading stage, "[t]here is no requirement that" the plaintiff "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish . . . causation." *Jordan by Jordan*, 15 F.3d at 339. Indeed, in holding that only the notice pleading requirements of Federal Rule of Civil Procedure 8 applied to *Monell* claims, the Supreme Court stated, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993); *accord Jordan by Jordan*, 15 F.3d at 340. Courts in this District have heeded this call, and held that a plaintiff need only allege that the municipality "was aware of ongoing constitutional violations," and that this awareness allowed the custom of unconstitutional practices to continue developing. *Garcia v.*

13

*Montgomery County*, No. JFM-12-3592, 2013 WL 4539394, at *5 (D. Md. Aug. 23, 2013); *see also, e.g.*, *McDowell*, 2018 WL 3756727, at *6; *J.A. v. Miranda*, No. PX-16-3953, 2017 WL 3840026, at *7 (D. Md. Sept. 1, 2017). Plaintiffs have met that forgiving standard here.

### C. Counts Four and Five State Law Negligence Claims/ Public Official Immunity

The individual Defendants—Officers Wilkes, Stargel, and Besaw—assert that they have public official immunity as to the state law negligence claims asserted in Counts Four and Five. ECF 24-26. Maryland courts have long recognized the common law doctrine of public official immunity. *E.g.*, *James v. Prince George's County*, 288 Md. 315, 323 (1980). Public official immunity is "generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Lee v. Cline*, 384 Md. 245, 258 (2004). The immunity typically applies in cases involving "a tort claim based upon [an] alleged mis-judgment or a negligent exercise of judgment," and is "intended to be a defense against claims that a 'better choice' could have been made." *Id.* at 261.

For public official immunity to apply, it must be shown that (1) the actor is a public official, "rather than a mere government employee or agent"; (2) the alleged tortious conduct "occurred while the actor was performing discretionary, as opposed to ministerial, acts"; (3) the actor committed the relevant acts "within the scope of his official duties." *Thomas v. City of Annapolis*, 113 Md. App. 440, 452 (1997). Police officers are "public officials" under Maryland law, *see, e.g.*, *Robinson v. Bd. of Cty. Comm'rs for Prince George's Cty.*, 262 Md. 342, 347 (1971), leaving only the final two elements at issue here.

Once those three conditions are met, "the public official enjoys a qualified immunity." *Thomas*, 113 Md. App. at 452. That immunity is defeated, however, if the actor performed the relevant acts with "malice," id., acts with "gross negligence," *Cooper v. Rodriguez*, 443 Md. 680,

723 (2015), commits an intentional tort, *Houghton v. Forrest*, 412 Md. 578, 586, 588 (2010), or commits a state constitutional tort, *Ritchie v. Donnelly*, 324 Md. 344, 370 (1991). "Actual malice is established by proof that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Bord v. Baltimore County*, 220 Md. App. 529, 557 (2014) (quoting *Town of Port Deposit v. Petetit*, 113 Md. App. 401, 416 (1997)); *see also Hines v. French*, 157 Md. App. 536, 562-63 (2004) (characterizing this definition as the standard for "malice" for the purposes of public official immunity). The plaintiff "'must allege with some clarity and precision those facts which make the act malicious.'" *Talley v. Farrell*, 156 F.Supp.2d 534, 545 (D. Md. 2001) (internal citations omitted). Gross negligence, on the other hand, is

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist.

*Cooper*, 443 Md. at 708 (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). Whether one acted with malice or gross negligence is typically a fact-dependent determination. *See id.* at 708-09; *Artis v. Cyphers*, 100 Md. App. 633, 653-54 (1994).

The SAC contains an allegation that "Defendants Wilkes, Besaw, and Stargel knowingly acted to deprive Decedent Spencer McCain of his Constitutional rights maliciously and with reckless disregard." ECF 53 ¶ 102. It is devoid, however, of facts suggesting "an evil or rancorous motive influenced by hate," such that it does not adequately plead "actual malice." That said, taking Plaintiffs' factual allegations as true, they have presented a plausible claim that Defendants acted with utter indifference to Mr. McCain's rights to be free from unreasonable seizure and

15

deprivations of liberty; i.e., that they acted with gross negligence. Hence, while the evidence may later refute Plaintiffs' contentions, Defendants are not entitled to dismissal of Plaintiffs' claims by virtue of statutory immunity. The state law gross negligence claims against the Officer Defendants will proceed to discovery.[2]

However, "counties are shielded from tort liability for governmental actions unless the General Assembly has specifically waived the immunity of the municipality," and Maryland law contains "no blanket waiver of governmental immunity regarding local jurisdictions." *Williams v. Prince George's Cnty.*, 685 A.2d 884, 887, 899 (Md. Ct. Spec. App. 1996). In particular, Maryland courts have explained that governmental immunity can shield local governments from gross negligence claims. *See Williams*, 685 A.2d at 899 (explaining that a county can invoke governmental immunity in response to false arrest, false imprisonment, negligence, and gross negligence claims). Plaintiffs' apparent contention that Counts IV and V contain a cause of action for *respondeat superior* for state constitutional torts is unavailing, as Counts IV and V are, as described above, common law gross negligence claims. *See* ECF 55 at 23-24. Accordingly, those counts will be dismissed against Baltimore County.

### D. Dismissal of Plaintiffs' Punitive Damages Demand Is Premature

Finally, Defendants seek dismissal of Plaintiffs' request for punitive damages as one potential remedy for their constitutional claims. Assessment of the types of damages that might be available if Plaintiffs eventually prevail on their claims is not well-suited to the relevant question presented in a Rule 12(b)(6) motion—whether Plaintiffs have adequately stated claims

---

[2] Defendant's contention that Count V should be dismissed, because it is captioned "Survival," lacks merit. While Defendants correctly note that "Survival" is not an independent cause of action in Maryland, a reading of the Count clearly reflects that it is a gross negligence claim brought on behalf of the Estate to recover for the pain and suffering Mr. McCain experienced before his death.

affording them some basis for relief. Because, as described above, Plaintiffs have stated certain viable claims, this Court declines to address the propriety of punitive damages at this early stage of the litigation. Defendants will be free to re-raise the issue as the litigation proceeds.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 54, is GRANTED IN PART and DENIED IN PART. Specifically, the Motion will be granted in part as to Counts One and Two, in that the federal constitutional claims under the Fourteenth Amendment and the state constitutional claim under Article 24 will be dismissed. The Motion will also be granted in part to the extent it seeks dismissal of the gross negligence claims in Counts Four and Five against Baltimore County only. The Motion will be denied as to all other constitutional and state law claims, leaving at least some portion of each Count viable. A separate implementing Order follows.

Dated:  March 12, 2021                                              /s/
                                                             Stephanie A. Gallagher
                                                             United States District Judge